411 So.2d 13 (1982)
STATE of Louisiana
v.
Ronald CAMINITA.
No. 81-KA-1940.
Supreme Court of Louisiana.
March 1, 1982.
Rehearing Denied April 5, 1982.
*14 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Thomas Chester, John H. Craft, Asst. Dist. Attys., for plaintiff-appellee.
Servando Garcia, Frank J. Uddo, Basile J. Uddo, New Orleans, for defendant-appellant.
SAVOIE, Justice Ad Hoc.[*]
On October 26, 1979, defendant was charged by bill of information with the armed robbery of a Ground Pati Restaurant employee in New Orleans. Subsequently, defendant entered a plea of not guilty to that charge. Two motions to suppress were filed prior to trial by defendant's counsel. A motion to suppress the evidence was denied by the trial court on January 25, 1980. The motion to suppress defendant's confession was taken under advisement and granted on January 29, 1980.
Pursuant to an alleged plea-bargain, defendant appeared before the court on March 6, 1980, withdrew his former plea of not guilty and tendered a plea of guilty to simple robbery. The State objected to this plea as unacceptable. Immediately thereafter, defendant filed a motion to quash the bill of information based on the state's alleged non-compliance with their previous plea-bargain agreement. The trial court denied this motion despite defendant's objection. Defense counsel notified the trial judge of his intention to take writs to this Court. A thirty-minute delay was given to defendant to attempt this application for writs and a stay order. The application was denied by this Court. The trial judge continued the trial date and set it for March 11, 1980. Trial began on that date and resulted in a jury verdict of guilty as charged. Subsequently, defendant filed a motion for a new trial which was denied by the trial court on June 13, 1980. On that same date, the trial court sentenced defendant to a term of five (5) years imprisonment at hard labor.
The facts of this case show that on October 23, 1979, at approximately 2:30 A.M., an employee of the Ground Pati Restaurant opened the locked rear door of the building to take out the trash. As he was walking back to the building, he heard noises in the hedges. When he looked in that direction, two boys armed with a knife and a gun rushed at him and ordered him to open the door. Since the door was locked from the inside, the employee had to knock on the door to get the manager, Jerry Roszezynialski, to open it. When Mr. Roszezynialski opened the door, all three persons entered the restaurant. The two armed robbers put the employee, Mr. Minor, in the cooler. Holding a gun on Mr. Roszezynialski, they ordered him to open the safe. After the safe was opened, one boy grabbed a female employee's purse and stuffed the money into it. With this accomplished, the robbers placed Mr. Roszezynialski in the cooler and fled.
*15 While all of this was happening, a young female employee of the restaurant ran out the front door and across the street to the Tastee Donut Shop where two policemen were sitting in their unit. She informed them that "Ronnie was robbing the Ground Pati". When the officers arrived on the scene, the perpetrators had fled. On the ground in the rear of the building they found two stocking masks worn by the robbers and several coins taken from the restaurant.
The perpetrators were described by the witnesses as one black youth and one white youth, both wearing stocking masks. The young white man was described as 5'7" or 5'8", stocky build, wearing white bluejean pants and a yellow shirt. Katheryn Alderman, the female employee who notified the police officers, testified that she recognized the white youth as defendant, Ronald Caminita, an ex-employee of the restaurant. Another employee, Peggy Austin, also recognized defendant as one of the perpetrators.
Subsequently, defendant was arrested and charged with armed robbery.
The defendant appeals his conviction on two assignments of error:
1. The trial court erred in failing to grant the defense's motion to quash on the grounds that the State had failed to honor a plea-bargain agreement.
2. The verdict was contrary to the law and the evidence.
ASSIGNMENT OF ERROR NO. 1
The trial court erred in failing to grant the defense's motion to quash on the grounds that the State had failed to honor a plea-bargain agreement.
Soon after learning of the arrest of Caminita on a charge of armed robbery, and after being retained by the family as defense counsel, attorney Frank Uddo began making energetic efforts to persuade the Orleans Parish District Attorney's office to permit his client to enter a plea of guilty in return for concessions on the eventual sentence. He spoke to at least three attorneys employed by the District Attorney's office, including District Attorney Harry Connick. The parties here give radically inconsistent accounts of these conversations. Mr. Uddo says that a conversation between himself and Chief of Trials, Joseph Meyer, which took place during a chance meeting in a restaurant, ended with a handshake between the two, confirming Meyer's promise to accept a guilty plea to simple (rather than "armed") robbery, which would carry a relatively short jail sentence, that could be served locally rather than at the State Penitentiary. Uddo says that in his earlier conversation with Mr. Connick, Connick had said that he would make no deal on the case since it was not his direct responsibility, but that he would support whatever decision was made by his subordinates. Connick maintains that he told Uddo no deal was possible at all.
Chief of Trials, Meyer, denies promising to reduce the charge against Caminita and complains, too, that Mr. Uddo deceived him by saying that such a deal would be acceptable to District Attorney, Connick.
At any rate, during a telephone conversation next morning between Meyer and Uddo, Uddo was apprised that Meyer would not reduce the charges against Caminita. Uddo asserted Caminita's right to specific performance of the plea-bargain before the trial court, but, after hearing evidence, the trial judge held that whether or not the elements of a binding contract, under the civil law, were present, the District Attorney's office was free to withdraw its promise so long as the defendant had not suffered prejudice to his substantial rights by reliance on the promise. Finding no detrimental reliance, the court refused to compel adherence to the alleged agreement. We think the ruling was correct.
This is not the first time that this court has been presented with an insistence by a criminal defendant on the right to specific performance of a plea bargain agreement. In State v. Nall, 379 So.2d 731 (La.1980), the prosecuting attorney promised to reduce the charges against an accused in return for *16 the accused's testimony against his co-defendant. However, the statement given by the accused in fulfillment of his part of the bargain was completely different from what the prosecutor had been led to expect, so the prosecutor refused to be bound by his promise. Justice Blanche, writing for the majority of this court, analyzed the case under principles of the civil law of obligations, finding the plea-bargain agreement void for lack of cause on account of the defendant's misrepresentation of what his testimony would be. Justice Dennis, concurring, stated that the case turned on the constitutional guarantee of fundamental fairness contained in the Due Process Clause of the 14th amendment, and warned against excessive attention to the niceties of contract law in this context, citing Cooper v. United States, 594 F.2d 12 (4th Cir. 1979).
We do not read Nall as revealing any real difference of opinion among the members of this court on this point. Justice Dennis' concurrence merely points up what is implicit in the majority opinion, that the traditional law of contracts guides educated expectations of fairness in any negotiation and can be useful by analogy in weighing claims of denial of due process in plea negotiations. Certainly, if we confined ourselves to contract principles in this case, we might deny enforcement of the alleged agreement on the grounds that a plea bargain is a type of "Transaction and Compromise" which our Civil Code requires to be in writing; CC art. 3071.
But the real question is whether Ronald Caminita has been dealt with in a manner so fundamentally unfair that it "shocks the (judicial) conscience". For purposes of this analysis, we take the defendant's version of the facts as true, since the trial judge made no fact-findings but rather found as a matter of law that the defense was not entitled to enforce the agreement even on the supposition that a promise was made.
The United States Fourth Circuit Court of Appeals has held on very similar facts, in the Cooper case, cited above, that the government cannot withdraw its consent to a plea-bargain, once made, when a higher-up in the prosecutor's office disagrees with the judgment of the attorney who struck the deal. Cooper is the only case in any jurisdiction to so hold and we reject its rationale. Absent any showing of detrimental reliance prejudicial to the substantial rights of the accused, or evidence of devious practice by the government such as bad-faith negotiation designed to psychologically probe the defense or gain some other improper advantage, the government remains free to withdraw from a plea agreement up to the time the plea is entered. The only detriment claimed by the defense here is that Mr. Caminita's hopes were raised when he was informed of the unsuccessful plea negotiation, then dashed when he was informed that the District Attorney had allegedly over-ruled his subordinate and repudiated the deal.
This is not enough to render the proceedings unconstitutionally unfair. We approve the reasoning of Judge Everett in U. S. v. Kazena, 11 M.J. 28 (C.M.A.1081):
"When an accused has demonstrated detrimental reliance on a plea-bargain, for example, by failure to call witnesses as to guilt or innocence who might otherwise have been available, I would enforce the plea-bargain. Virgin Islands v. Scotland, (cite). Conceivably, some other situations will reveal such `unfairness' on the part of the convening authority in connection with a plea-bargain that performance by the Government should also be compelled. Cf. Cooper v. United States, (cite) In the case at bar, there is no indication of detrimental reliance by the appellant, nor of unfairness on the convening authority's part. Therefore, despite the absence from the pretrial agreement of any provision purporting to allow the convening authority to withdraw from the agreement, he was free to do so until the plea of guilty had been accepted."
ASSIGNMENT OF ERROR NO. 2
The verdict was contrary to the law and the evidence.
*17 Caminita was convicted of holding up a restaurant at which he had previously been employed. He wore a nylon stocking over his head during the commission of the crime but two waitresses who had been employed along with him testified positively that they recognized him instantly and had no doubt at all that he was the robber.
From the record, it is apparent that the State presented adequate evidence by which the jury could find the defendant guilty beyond a reasonable doubt.
This Court's review of a trial court's denial of a new trial motion based on the assertion that the verdict is contrary to the law and the evidence is limited to the question of whether the trial judge has properly exercised his wide discretion. La.C.Cr.P. Art. 851; State v. Turner, 365 So.2d 1352, 1355 (La.1978). It does not appear that the trial judge in this case violated that discretion.
For the above and foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[*] Judges Shortess, Carter and Savoie of the Court of Appeal, First Circuit, participated in this decision as associate justices ad hoc, joined by Chief Justice Dixon, joined by Associate Justices Calogero, Marcus and Dennis.