677 So.2d 539 (1996)
STATE of Louisiana
v.
Cathy HAMILTON.
No. 96-K-0807.
Court of Appeal of Louisiana, Fourth Circuit.
June 7, 1996.
*540 Harry F. Connick, District Attorney, David Weilbaecher, Jr., Assistant District Attorney, New Orleans, for Relator.
Before BYRNES, WALTZER and LANDRIEU, JJ.
WALTZER, Judge.
We are once more called upon to review this defendant's sentence under the provisions of La.C.Cr.P. art. 881.2(B).

STATEMENT OF THE CASE
Cathy Hamilton, the defendant herein, was charged by bill of information on 29 December 1994 with a violation of R.S. 14:89(2), relative to crime against nature. On 14 February 1995, the day set for trial, Hamilton withdrew her earlier plea of not guilty and entered a plea of guilty as charged. According to the minute entry on the same date (the multiple offender plea is dated 15 February 1995), the defendant plead guilty to a multiple offender bill of information charging her to be a twice convicted felon. The defendant was sentenced to serve 18 months at hard labor as a multiple offender under the provisions of La.R.S. 15:529.1. On 17 February 1995 the State filed a "Motion for Reconsideration of Sentence or alternatively, Motion to Enforce Plea Agreement," (emphasis supplied). The district court denied the motion to reconsider the sentence and/or enforce the plea agreement. From this ruling the State appealed and argued that the trial court erred in sentencing a second offender convicted of crime against nature to 18 months at hard labor, when the mandatory minimum *541 under La.R.S. 14:89(2) and La.R.S. 15:529.1 is two and one half years. More specifically, the State acknowledged that the trial court has authority under State v. Dorthey, 623 So.2d 1276 (La.1993), to impose a lesser sentence than the mandatory minimum. But, the State argued, the trial court did not support its decision with sufficient argument and analysis to justify the sentence of less than the mandatory three years under applicable provision of the multiple bill statute. Additionally, the State complained that a plea bargain confected among the trial court, the prosecution and the defendant had been broken and that the judge sua sponte disregarded the plea bargain agreed to among all the parties.
In an unpublished opinion, this court affirmed the 18 months sentence, holding that the trial judge understood and complied with the test required by Dorthey, supra when he reduced the mandatory minimum sentence to two and one half years to 18 months. This court did not consider the State's argument that the plea bargain made by all the parties had been disregarded. The opinion of this court is silent on the State's request to order specific performance of the plea bargain contract.
The Louisiana Supreme Court granted the State's application for writs, ultimately ruling that "although the trial court cited Dorthey in his reasons it does not appear that he made a proper finding that imposition of the statutory mandated sentence would be constitutionally excessive". State v. Hamilton, 95-2462 (La. 2/2/96), 666 So.2d 655. The judgment of our court was vacated and the case was remanded to the trial court to justify its deviation from the statutorily-mandated minimum sentence. Chief Justice Calogero concurring in the remand wrote inter alia that "the substantive power to define crimes and prescribe punishments lies in the legislative branch of government", and "our decision in State v. Dorthey, 623 So.2d 1276 (La.1993), did not purport to grant a district court the power to usurp that legislative prerogative or to impose what the court believes is the most appropriate sentence for a particular offender in a particular case." Hamilton, supra at 656. The Supreme Court per curiam did not address the State's argument concerning the broken plea bargain.
After remand, the trial court resentenced the defendant on 15 March 1996. The trial court stated:
During the time of the pre-trial in this case I heard the facts of this case, which were essentially that a conversation occurred between herself [the defendant] and an undercover officer in which she engaged in the crime of prostitution. Prostitution is 14:82, it carries 6 months. It also gives the ... state a choice to go with prostitution, which is a 6-month offense, or solicitation for crime against nature, which is a 5-year sentence ... And I believe that the minimum of 2 and a half years for solicitation of prostitution is ludicrous, ridiculous and unconstitutionally excessive.... The Court is going to sentence the defendant to serve 18 months in the Department of Corrections because imposing the 2 and a half year minimum sentence would be nothing more than the hurtful imposition of pain and suffering. That the sentence of 2 and a half years is grossly out of proportion to the severity of this crime. And the punishment of 2 and a half years in this specific case, because of a conversation that occurred between an undercover officer and this lady, makes no measurable contribution whatsoever to the acceptable goals of punishment.
This writ application followed. In seeking relief, the State in brief includes its Motion to Enforce the Plea Agreement and Motion to Reconsider Sentence, pursuant to the plea agreement confected among the State, the defendant, her attorney and the trial judge, and asserts in the statement of facts that:
On February 14, 1995, although the defendant was a triple offender, the defendant and the State entered into a plea agreement wherein she would plead guilty to crime against nature solicitation LSA-R.S. 14:89 and receive a two and a half-year (thirty month) sentence as a double offender. As a triple offender, the defendant faced a minimum forty month sentence. The trial court found her to be a double offender but sentenced her to eighteen *542 months incarceration despite the plea agreement of two and a half years thirty months). The agreed upon sentence of two and half years was written on the defendant's Boykin form. (emphasis supplied).
The State urges us to review the sentence under the provisions of LSA-C.Cr.P. Art. 881.2(B)(1)(b). In the instant writ, the State does so by framing the issue solely as a Dorthey claim, alleging that the trial court failed to demonstrate why the minimum sentence of two and one half years (thirty months) under the plea agreement was excessive.

DISCUSSION
Initially, we note that the grant of supervisory jurisdiction to this court by La. Const. Art. 5, Section 10(A) is broad enough to include correction of any error which is adverse to the rights of any party. The absence of an appellate remedy requires the exercise of our supervisory jurisdiction in order to correct the erroneous ruling under consideration. State v. Dufrene, 488 So.2d 225 (La.App. 4 Cir.1986). It is also axiomatic that the District Attorney has the discretion to charge and to initiate plea bargains. Although the filing of an habitual offender bill does not involve the prosecution of a substantive crime, the discretion to charge a defendant under the Habitual Offender Law lies with the District Attorney and no one else. Moreover, the District Attorney is the only official vested with the authority to engage in a plea bargain on behalf of the State. State v. Howard, 448 So.2d 150 (La.App. 1 Cir. 1984), writ denied, 449 So.2d 1355 (La.1984). The trial court has no authority to enter into an ex parte plea agreement with a defendant or to enforce its terms. La.C.Cr.P. arts. 558 and 691. When a guilty plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); State v. Redfearn, 441 So.2d 200 (La.1983). Even if there were no plea bargain with the State, if defendant justifiably believed there was, and pled guilty in part because of that justifiable belief, the guilty plea was not knowingly made. In such a case the plea must be set aside and defendant allowed to plead anew. See, State v. Hayes, 423 So.2d 1111 (La.1982); State ex rel. LaFleur v. Donnelly, 416 So.2d 82 (La. 1982).
The State alleged that the defendant's prior convictions were for crime against nature, a violation of LSA-R.S. 14:89 in 1993, child desertion, a violation under LSA-R.S. 14:93.2.1 in 1992, and crime against nature by solicitation, a violation of LSA-R.S. 14:89, and two separate charges of prostitution, violations under LSA-R.S. 14:82 in 1988. If charged as a thrice convicted felon, the defendant's exposure would have been 40 months up to 10 years in the custody of the Department of Corrections. LSA-R.S. 15:529.1(A)(1)(b)(i).
A review of the record reveals the following:
1) a guilty plea form to the underlying felony of crime against nature, signed by the defendant, the defendant's attorney and the court, dated 14 February 1995, with a hand written notation: 2½ YEARS DOC AS A DOUBLE OFFENDER;
2) a minute entry showing that the plea to this offense was accepted according to the plea form;
3) a multiple offender bill of information charging the defendant as a twice convicted felon, stamped filed 14 February 1995;
4) a plea of guilty as a multiple offender initialled and signed by the defendant; signed by her attorney and the trial judge, stamped filed 14 February 1995, but hand dated 15 February 1995 with the notation: I UNDERSTAND THAT THE SENTENCING RANGE AS A MULTIPLE OFFENDER IN THIS CASE IS 2½ YEARS DOC AS A DOUBLE OFFENDER AND THAT THE SENTENCE I WILL RECEIVE IS 2½ YEARS AS A DOUBLE OFFENDER (emphasis supplied).
5) the minute entry mentioned above to show that the plea as a twice convicted felon was entered on 14 February 1995; and
6) a motion for reconsideration of sentence or, alternatively MOTION TO ENFORCE *543 PLEA AGREEMENT filed 17 February 1995.
A close look at the plea form concerning the underlying offense also shows the notation: THE JUDGE HAS ADDRESSED ME PERSONALLY AS TO ALL OF THESE MATTERS, AND HE HAS GIVEN ME THE OPPORTUNITY TO MAKE ANY STATEMENT I DESIRE, (it is following that part of the judge's colloquy with the defendant that the notation "2½ years DOC as a double offender" is written in by hand).
In the instant case there was a specific and unambiguous plea struck by the State, the defendant and the court, as evidenced from the signed forms mentioned above. The defendant knew at all times that she had bargained to be charged as a twice instead of a thrice convicted felon in exchange for a 30 months sentence. Here the State did not renege, but the trial judge decided ex parte to impose a sentence of his choosing without regard to the contract confected by all the parties, including the trial judge, when he imposed a lesser sentence than agreed upon. Although in this case a specific agreement had clearly been reached, and the State and the defendant had fully and substantially performed on the State's side of the bargain, the State was aggrieved by the failure of the court to perform a promise upon which the State had relied to its tangible detriment. The consent of all parties was one of the requisites for a valid agreement, and the contract created obligations on all the parties to perform the contract in good faith. La.C.C. arts. 1823-1824. In the particular agreement here, the "cause" for the State's agreement was a guilty plea in return for the diminished culpability of the defendant under the habitual offender law along with a 2½ year sentence.
When the trial court was requested to remedy this breach, the trial court failed to give the appropriate remedy, specific performance or recision of the contract, and denied the State's motion for reconsideration of sentence.

CONCLUSION
Properly administered pleas of guilty benefit all concerned; the guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. The defendant avoids extended pretrial incarceration and the anxieties and uncertainties of a trial, gains a speedy disposition of her case, gets a chance to acknowledge her guilt and a prompt start in realizing whatever potential there may be for rehabilitation. Judges and prosecutors conserve vital and scarce resources. The public is protected from the risks posed by those charged with criminal offenses who are at large on bail while awaiting completion of criminal proceedings. These advantages can be secured, however, only if dispositions by guilty plea are accorded a great measure of finality. Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).
Although the trial court at resentencing stated that a 2½ year sentence would be "ludicrous, ridiculous and constitutionally excessive" ... and ... "makes no measurable contribution whatsoever to the acceptable goals of punishment", a larger issue was involved here and the trial court erred when it failed to impose the sentence he previously announced the defendant would receive as part of the plea bargain.
When, as here, promises are broken, the honor of the system is at stake along with public confidence in the fair and reliable administration of justice. The integrity of the process demands that all participants in this process be clear and reliably dependable in their commitments and promises, regardless of whether it is the State or the defendant who relied on the mutual agreements made with the court. Binding agreements are to be implemented so that confidence in the court system may be preserved. If all participants in the process at the plea stage are mindful of the importance of adhering carefully to the prescribed procedures and of preserving a full record thereof, the causes of justice and finality will be served.
The State relinquished its opportunity to file a triple offender bill in exchange for a commitment by the defendant, her counsel and the court that the defendant understood she would receive and would, in fact, receive a sentence of 2½ years in the Department of Corrections when double billed. Solemn declarations *544 in open court carry a strong presumption of verity. The trial court had no authority to impose a sentence which did not comport with the agreement reached among all parties. The State is entitled to have the plea agreement specifically enforced or in the alternative, to have the agreement set aside.
WRIT GRANTED. SENTENCE VACATED AND CASE REMANDED FOR RESENTENCING.
LANDRIEU, J., dissents.
LANDRIEU, Judge, dissenting.
In a rush to create a new theory of law, the majority reverses the trial court on an issue not raised nor briefed by the State and without affording the defendant an opportunity to address that issue.
The mere fact that the trial judge signed defendant's waiver of rights forms for the underlying offense and multiple bill is not of itself proof that the trial judge bargained away his constitutional duty and "contracted" with the District Attorney to sentence the defendant to 2½ years. The majority, preferring to conclude that the trial judge entered into such an agreement and immediately breached it, has refused to request a per curiam from him to first establish whether he committed to the District Attorney that he would sentence the defendant to 2½ years. Even if the State had triple billed the defendant, the trial judge, under Dorthey, could have found that any sentence longer than 18 months was unconstitutional under the circumstances. He might or might not be correct in so finding, but it makes one wonder why the trial judge would bargain away his right and then, immediately thereafter, break his word.
Not once in the long journey of this case through the trial court, this court, the Supreme Court, the trial court again, and now this court again does the State maintain that the trial judge broke a promise to sentence the defendant to 2½ years. One would think that the judge should be allowed to say a few words before the majority "hangs" him and the defendant should be allowed a few before she is shipped off to the DOC for 2½ years.
When I receive a per curiam and a response from the defendant, I will express my view on the merits.