735 So.2d 746 (1999)
STATE of Louisiana
v.
Sidney ANTHONY.
No. 99-K-0107.
Court of Appeal of Louisiana, Fourth Circuit.
April 7, 1999.
Writ Denied June 25, 1999.
*747 Harry F. Connick, District Attorney, Roger Williams Jordan, Jr., Assistant District Attorney, New Orleans, Louisiana, Counsel for the State.
Richard Carlton Teissier, Mark Daniel MacNamara, New Orleans, Louisiana, Counsel for the Defendant.
Court composed of Judge WILLIAM H. BYRNES III, Judge JOAN BERNARD ARMSTRONG, and Judge DENNIS R. BAGNERIS Sr.
BYRNES, Judge.
We grant certiorari to review the ruling of the trial court that granted the defendant Sidney Anthony's motion to enforce the plea agreement. We reverse and remand.
On January 30, 1997 the defendant and codefendants, Malcolm Hill, Phillip Anthony and Tracey Marquez, were indicted on three counts of first degree murder, a violation of La. R.S. 14:30(1), in the deaths at the Louisiana Pizza Kitchen. On September 26-27, 1997, a jury found Phillip Anthony guilty as charged and determined that he should be sentenced to death. On November 3, 1997, Hill pleaded guilty and was sentenced to life imprisonment on each count with the sentences to run consecutively. On December 12, 1997, Phillip Anthony was sentenced to death as to each count. On March 4, 1998, Tracey Marquez pleaded guilty to an amended indictment to four counts of armed robbery, three counts of manslaughter, and one count of attempted first degree murder. Marquez was sentenced to fifty years without benefits on the four counts, forty years on the three counts, and fifty years without benefits on the one count with the sentences to run concurrently.
The evidence presented at the trials and proceedings was that Sidney Anthony drove the three codefendants to the French Quarter on the morning of the crime and dropped them off several blocks from the Louisiana Pizza Kitchen. Sidney Anthony's attorney, Rick Tessier, was actively involved in plea negotiations with the State. On May 13, 1998 Tessier and the prosecutor, Roger Jordan, submitted a *748 proposed plea agreement to reduced charges with 15 year concurrent sentences to Judge Julian Parker for approval. The judge was reluctant to accept the plea. After an ex parte meeting with the family members of two of the victims, Judge Parker rejected the proposed plea agreement because the sentencing recommendation was unacceptable.
On May 20, 1998 Anthony filed a motion to recuse. When no action was taken, Anthony filed a writ application in this court in Case No. 98-K-1312. On May 28, 1998 this Court ordered the trial court to rule upon the motion for recusation by noon of the next day. Eventually on October 23, 1998 Judge Parker recused himself, and the case was transferred to Section "A". Anthony filed a motion to enforce the plea agreement. On December 17, 1998, Judge Elloie granted Anthony's motion and ordered that the plea agreement be enforced. The State objected and applied for supervisory writs to this court.

STATEMENT OF THE FACTS
Tessier testified that when he and Jordan spoke to the judge about Anthony, Judge Parker required affidavits from each of the victims' families as well as an agreement from Anthony to plead according to the number of years agreed to by the State and the defense. According to Tessier, he and Jordan had agreed on a sentence of fifteen years on charges of manslaughter and armed robbery counts; the sentences were to run concurrently. Jordan required that one charge would be manslaughter along with several counts of armed robbery. Jordan produced the affidavits from the victims' families in which they declared that they could live with the 15 year sentence. Tessier and Anthony went through the plea agreement and Anthony signed the guilty plea form. Only the colloquy with the judge was needed to complete the guilty plea.
Judge Parker looked at the plea and the number of years and said that he was reluctant to go through with the agreement. Judge Parker went into chambers and talked to the victims' family members without the presence of the prosecutor or the defense. Tessier related that after an hour the judge "revoked the deal that had already been struck." Judge Parker stated that he would accept a 25 year sentence and the defense had ten minutes to decide. Tessier noted that the prosecutor, Jordan, was in the courtroom with him.
The defense asserted that Judge Parker had injected himself into the negotiations and set out the requirements. The State and the defense met the requirements; the judge refused to honor the agreement. Tessier claimed that his relationship with his client had been greatly affected. Both the defense and prosecutor noted that Judge Parker was concerned about the victims' families and the affidavits. The judge "was concerned about people getting on the courthouse steps."
This writ application does not involve a review of Judge Parker's decision to refuse the plea. It involves the review of Judge Elloie's decision to grant Sidney Anthony's motion to enforce the plea agreement after Judge Parker recused himself and the case was transferred to Section "A".
Judge Elloie, the trial judge in Section "A" declared:
But once they got on the courthouse steps, he still has the affidavits.... And I'm saying that if I have an agreement as a judge andThe heat? That's why you're here. That's why you're here. That's why you get paid the little bucks, to be able to deal with whatever heat comes. And it comes in all forms. And nothing is ever safe whenever you make a decision. And you've got decisions that you've got to make.
And as such, I'm going to order the enforcement of that plea bargain agreement contingent on, contingent ontalk with that family again. I'm saying once everyone has agreed and the family has also agreed, the family has agreed that this is what it is, I don't think it's my place to get involved in that. Especially *749 if I've already set some perimeters that had to be followed. Now, in the Collins case, I agree with that too. And that's not wrong if I haven't set perimeters in the beginning. And for the most part, when you all talk in terms of plea agreements, the thing that I hear 95 percent of the time from across the street is sentencing is for the judge. But if there's been an agreement between the parties, I'm not going to disturb that agreement. And I think in this particular instance that that plea bargain agreement should have been enforced.
Now you get different kinds of decisions according to which door you walk in on this floor. I'm not going to say that Julian was wrong. But I'm saying that if I were presented with the same situation, regardless of how I feltand especially I'm not going to be concerned about the media. And in fact, I think that most judges who are concerned about the media and a lot of them play to the media and I think it's wrong playing to the media.... And I'm not going to have any media direct the decisions. The media didn't elect me. I wasn't supported by the Times Picayune, I wasn't supported by Channel 4. People. And I'm going to make a decision based basically upon what people deal with. And I'm saying that the agreement was already there and regardless of what the family or anybody else had to say afterwards, we got it in black and white. So I would ask you to go back to that family and talk with that family again, because one way or the other I think I'm going to enforce that agreement.
Jordan asked for clarification. He asked whether the judge meant that the plea agreement was to be enforced qualified by the consent of the victims' families. Judge Elloie explained:
... But I'm saying, if you talk with them and deal with what their initial feelings were on this prior to that intercessory conversation and let them know that now it's in a section where the judge is going to impose it anyway, I think they're going to agree to it and they're going to experience some closure. They're going to experience some closure.
In his reasons Judge Elloie concluded that everyone had agreed and certain guidelines had been met. He felt that there had been an agreement, which should be enforced.
The State argues that the defendant was not entitled to enforcement of the plea agreement when the trial court rejected the plea agreement, and the defendant never detrimentally relied on that agreement.
The defendant refers to contract civil law in determining that the plea agreement is binding on the parties, and avers that the trial court was bound by the plea agreement because it participated in setting the terms of the agreement. The trial court had not designated a time limit for the sentence but defendant's counsel Tessier averred that Judge Parker's position was that he was not interested in the number of years but required the victims' affidavits that they agreed to the amount of time to be served by the defendant. The defendant asserts that the terms were met, the contract was perfected, and the trial court was bound by the agreement. However, the negotiations continued after the trial court's input.
The Louisiana Supreme Court has viewed plea agreements as contracts between the state and the defendant; it has generally referred to the rules of contract law for application by analogy in determining the validity of such agreements. State v. Louis, 94-0761 (La.11/30/94), 645 So.2d 1144. However, the Court has noted that commercial contract law can serve only by analogy because plea agreements are constitutional contracts and they must be construed in light of the rights and obligations created by the constitution. Id. at 1148, quoting Ricketts v. Adamson, 483 U.S. 1, *750 16, 107 S.Ct. 2680, 2689, 97 L.Ed.2d 1 (1987). The Louisiana Supreme Court has held that a defendant's constitutional right to fairness may be broader than his or her rights under the law of contract. Id. See also State v. Nail, 379 So.2d 731 (La.1980).
A rule of contract law is that consent of the parties is required for a valid contract. Offer and acceptance may be verbal, unless the law dictates that it be in writing. La. C.C. art. 1927. An obligation may be dependent upon an uncertain event. La. C.C. art. 1767. Once there is offer and acceptance, the agreement is subject to specific performance. La. C.C. art. 1986. An obligation cannot exist without a lawful cause, the reason why a party obligates himself. La. C.C. arts. 1966 and 1967. The party seeking specific performance of a contract has the obligation of proving its existence. State v. Louis, 645 So.2d at 1149; State v. Kelly, 96-903 (La.App. 5 Cir. 11/12/97), 704 So.2d 800, writ denied, 97-3104 (La.4/9/98), 717 So.2d 1142. In State v. Hamilton, 96-0807 (La. App. 4 Cir. 6/7/96), 677 So.2d 539, 542, this court stated:
... [T]he District Attorney is the only official vested with the authority to engage in a plea bargain on behalf of the State. State v. Howard, 448 So.2d 150 (La.App. 1 Cir.1984), writ denied, 449 So.2d 1355 (La.1984). The trial court has no authority to enter into an ex parte plea agreement with a defendant or to enforce its terms. La. C. Cr. P. arts. 558 and 691. When a guilty plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); State v. Redfearn, 441 So.2d 200 (La.1983).
The State remains free to withdraw from the plea agreement up until the time the plea is entered absent any showing of detrimental reliance prejudicial to substantial rights of the defendant or evidence of devious practice by the State such as bad-faith negotiations aimed at gaining an improper advantage. State v. Caminita, 411 So.2d 13 (La.1982), certiorari denied, 459 U.S. 976, 103 S.Ct. 314, 74 L.Ed.2d 291 (1982). The trial court is under no duty to accept a plea bargain that restricts its sentencing authority. State v. Collins, 359 So.2d 174 (La.1978).
The defendant refers to the fact that: "The plea agreement is analogous to the concept of transaction and compromise in La. Civ.Code art. 3071. Under the article, a transaction or compromise is `an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.'" That article requires that the compromise agreement should be in writing or recited in open court and is capable of being transcribed from the record of the proceeding. The requirement that the compromise agreement be reduced to writing necessarily implies that the agreement be evidenced by documentation signed by the parties. DeSoto v. DeSoto, 96-1079 (La.App. 5 Cir. 4/29/97), 694 So.2d 1043. The parties are not bound until the agreement is signed or executed by the parties. In State v. Hamilton, 96-0807 (La.App. 4 Cir. 6/7/96), 677 So.2d 539, this court found that the trial court was bound to the plea agreement where the trial court had signed both the guilty plea forms on the underlying felony and the multiple bill, and the plea forms contained a specific sentence rather than a sentencing range. In the present case the trial court did not sign the guilty plea form, and therefore, the plea agreement as a compromise was not reduced to writing where all the parties were bound.
In a criminal case, the trial court shall not accept a plea of guilty or nolo contendere, without first addressing the defendant personally in open court. La.C.Cr.P. art. 556.1. This article indicates that the *751 final phase of the negotiations of a plea agreement is the acceptance by the trial judge. In some cases prior to a final plea agreement, the trial judge may declare that he will only take the State's negotiations for sentencing as a recommendation. State v. Landry, 97-1460 (La.App. 3 Cir. 5/6/98), 711 So.2d 853.
In the present case it is apparent that the trial judge thought that upon completion of plea negotiations, he still would have the right to determine whether he would approve or accept the plea agreement when it was presented to him. The trial judge was not committed until he reviewed the plea agreement upon the completion of the plea negotiations. He would be the last party to accept the last negotiations.
In State v. Caminita, 411 So.2d 13 (La. 1982), certiorari denied by Caminita v. Louisiana, 459 U.S. 976, 103 S.Ct. 314, 74 L.Ed.2d 291 (1982), the Louisiana Supreme Court held that absent a showing of detrimental reliance prejudicial to the substantial rights of the accused, or evidence of a devious practice by the government such as bad faith negotiations designed to psychologically probe the defense or to gain some other improper advantage, the government remains free to withdraw from the plea agreement up to the time that the plea is entered. In that case, the only detrimental reliance was that the defendant's hopes were raised when he was informed of a plea negotiation which was dashed when he was informed later that the prosecutor's superior overruled the subordinate and repudiated the deal. The defendant was not entitled to have the alleged plea bargain enforced.
In State v. Borchers, 97-67 (La.App. 5 Cir. 5/28/97), 695 So.2d 1054, writ dismissed, 97-1715 (La.11/14/97), 703 So.2d 1254, the appellate court found that even assuming that the defendant had reached a plea bargain with the State for a five-year sentence, to be enforced on a subsequent trial date, the State was not precluded from withdrawing the plea agreement at that time. During the colloquy prior to the plea, the trial judge specifically told the defendant that his sentence would be 25 years at hard labor, with credit for time served and without the benefit of parole, probation or suspension of sentence. The defendant could not seek review of the 25-year sentence where the defendant did not raise the issue of an enforceable plea agreement involving a lighter sentence at the time he actually entered his plea.
In State v. Simms, 465 So.2d 769 (La. App. 5 Cir.1985), the defendant Simms and his nephew claimed that Simms agreed to a seven-year plea bargain one week before trial but the defense attorney did not get back with him on the matter. During trial defense counsel told the defendant that they were still negotiating. The defendant's attorney and the State testified that no agreement was reached with the defendant. The appellate court held that even assuming that a plea bargain had been reached, the State was free to withdraw a plea bargain agreement up to the time that the plea is entered where there no showing of detrimental reliance prejudicial to the substantive rights of the defendant or a devious practice by the government.
In State v. Collins, 359 So.2d 174 (La. 1978), the Louisiana Supreme Court found that the trial court did not err by accepting the jury's guilty verdict although moments before, the trial judge had stated that if the jury returned a verdict prior to the defendant's entering a plea, he would accept the jury's verdict in lieu of the plea. At first during negotiations, the trial judge approved a sentence of seven years for simple robbery but changed his mind and stated that he would approve the plea if the parties agreed to ten years. Before the defendant filled out the plea form, the jury reached a verdict. The Louisiana Supreme Court held that the plea bargain had not been perfected or the plea tendered.
*752 Collins and Caminita provide authority that the State is free to withdraw a plea bargain agreement up until the time that the plea is entered where the defendant does not show detrimental reliance prejudicial to his rights. The defendant may also withdraw from the plea agreement until his plea of guilty is entered, and the trial court gives the defendant a proper and thorough Boykin hearing. As a general rule in the civil law of contracts, if one party is not bound, then the other parties are not bound. If the defendant and the State are not bound to the agreement until the guilty plea is entered, neither is the trial judge bound to accept it prior to his signing the guilty plea form.
In the present case, defense counsel stipulated that the defense was not trying to show detrimental reliance that went to trial preparation, in order to cut off a line of questioning. Defense counsel claims that Anthony relied on the agreement to his detriment as the attorney-client relationship was destroyed. The defendant's only detrimental reliance was in having his hope of a plea bargain dashed. The defense counsel, Tessier, took part in plea negotiations but did not take part in the trial judge's decision to propose a sentence of 25 rather than 15 years in this case. If the defendant showed that the attorney-client relationship was destroyed, another defense attorney could represent him. The record does not show whether the defendant requested that a new attorney should be substituted for further trial proceedings. Another defense attorney represented the defendant during the hearing on the defendant's motion to enforce the plea agreement because his previous attorney, Tessier, testified on behalf of the defendant at the hearing. On Sidney Anthony's behalf, Tessier and another attorney filed the responsive brief to the State's present writ application. The defendant's detrimental reliance on the attorney/client relationship would not be so prejudicial that it would affect the defendant's substantive rights, and any concept of fundamental fairness was not violated. There is no showing that there was any devious practice by the government or the trial judge.
The defense also contends that Judge Parker's ex parte meeting with the victims' families, including two relatives who testified at Philip Anthony's trial and were expected to testify at Sidney Anthony's trial, was illegal, violated the Code of Judicial Conduct, and tainted the proceedings. The defense contends that Anthony should be returned to his position just prior to the judge's improper meeting.
The defendant avers that unconstitutional evidence was introduced into the proceedings; Judge Parker improperly influenced witnesses; and Judge Parker poisoned the jury pool. The defendant asserts that Judge Parker tainted the proceedings because without the presence of the prosecutor or the defense counsel, the trial judge spoke in chambers with the victims' families who might be witnesses at trial. However, any "taint" of this off-the-record discussion is cured because Judge Parker recused himself, and the case has been transferred to another section of criminal court, and Judge Parker would have nothing to do with any further proceedings.
Considering that La. C.C. art. 3071 requires that the compromise agreement should be in writing (or recited in open court and is capable of being transcribed from the record of the proceeding); and considering that there was no showing of the defendant's detrimental reliance or a devious practice by the State or the trial court, the plea agreement was not finalized when the trial judge refused to sign the plea agreement in the present case.
Accordingly, the ruling of the trial court in Section "A" is reversed, and the defendant's motion to enforce the plea agreement is denied. The case is remanded for further proceedings.
*753 WRIT GRANTED; REVERSED & REMANDED.