801 So.2d 1150 (2001)
STATE of Louisiana
v.
Kenneth SINGLETON.
No. 2001-KA-0282.
Court of Appeal of Louisiana, Fourth Circuit.
November 7, 2001.
*1152 Harry F. Connick, District Attorney, Donna R. Andrieu, Assistant District Attorney, *1153 New Orleans, LA, Counsel for Plaintiff/Appellee.
Kevin V. Boshea, Williams Boshea & Ehle, L.L.C., New Orleans, LA, Counsel for Defendant/Appellant.
Court composed of Chief Judge WILLIAM H. BYRNES III, Judge STEVEN R. PLOTKIN and Judge MIRIAM G. WALTZER.
WALTZER, Judge.

STATEMENT OF CASE
Defendant Kenneth Singleton was charged by bill of information with first degree robbery, and carjacking in violation of La. R.S. 14:64.1 and 14:64.2. Defendant pleaded not guilty at his arraignment. The State amended the bill of information reducing the charge on the second count to attempted carjacking, a violation of La. R.S. 14(27):64.2. The court found probable cause as to count two, and found the remaining defense motions to be moot. The court subsequently heard evidence on the defense motion to suppress identification, following which the trial judge found probable cause and denied the motion to suppress.
A twelve-person jury found the defendant guilty as charged on 14 April 1999. At sentencing on 21 May 1999, the defendant filed a motion for new trial and the State filed a Multiple Bill under La. R.S. 15:529.1. Further evidence was taken from a character witness on 17 November 1999 and the court set the matter for multiple bill hearing. The matter was continued several times at defendant's request. On 21 June 1999, the trial court held a multiple bill hearing, the defendant was adjudged a second multiple offender as to count one only and the trial court sentenced the defendant to fifty years at hard labor. As to count two, the trial judge sentenced defendant to eight years at hard labor, to run consecutively with the sentence on count one. The court ordered the sentences to be without the benefit of probation, parole, or suspension of sentence. On 19 June 2000 the court denied the defendant's motion to reconsider sentence and granted his motion for appeal.

STATEMENT OF FACTS
Karen McKendrick, the victim of the first-degree robbery, testified that on 17 January 1998, as she walked down Jefferson Avenue at about 9:00 p.m., defendant approached her and demanded her purse. She further testified that the man had something that she thought was a weapon, covered with a piece of cloth and pointed at her. Miss McKendrick quickly complied by handing over her bag. She testified that the man continued to talk to her, but she did not understand what was said. Miss McKendrick ran home and called the police. When the police arrived Miss McKendrick gave them a description of the perpetrator. On 20 January 1998, Miss McKendrick was shown a photographic line-up from which she identified the defendant as the perpetrator of the armed robbery.
Ann Lind, the attempted carjacking victim, testified that as she returned home about noon on 19 January 1998, a man approached her as she exited her car. The man said, "Wait.... Give that to me," as he took her purse. Ann Lind was standing outside of her car when the man entered her vehicle on the driver's side throwing her purse on the front passenger seat. The man then exited the vehicle and demanded, "Give it to me." Mrs. Lind assumed the man meant her car key because that was the only thing she had at the time. Mrs. Lind further testified that the man approached her reaching for her hands. The man had an unidentifiable object in his hands that he used to strike Mrs. Lind on the hands causing her to *1154 bleed and scream. As she was screaming, she noticed the man was temporarily distracted by something behind him and by someone approaching from down the street. Three young men approached Mrs. Lind, and the man who took off running down the street, chased by the young men. Mrs. Lind's husband came out of their home as the man ran down the street, and Mrs. Lind asked her husband to call the police.. Shortly after they were called, officers arrived on the scene. The officers went to the area where the young men had the perpetrator cornered under a house. Once the police found and apprehended the man, Mrs. Lind identified him as the man who had taken her purse and attempted to take her car.
Jason Nay, one of Ann Lind's neighbors, testified that on 19 January 1998 he was at home babysitting his little brother when he heard screaming. He initially thought it was just neighborhood kids, but when it continued he decided to look out to see what was going on. When he looked out of the window he saw a man holding on to a woman who was screaming. Mr. Nay further testified that he went to his bedroom, retrieved his cordless phone, and dialed 911 as he went to stand on his front porch. When Mr. Nay walked on to the front porch, the man looked in his direction and then in the direction of three other young men who apparently were coming to assist. The man ran as the young men approached, and the young men chased him down the street, cornering him under a house. According to Mr. Nay, as he approached the woman to see if she needed help, he realized it was his neighbor Ann Lind.
William Lee, Mr. Nay's friend, corroborated his testimony.
Michael Dalferes, a detective with the New Orleans Police Department, testified that he and his partner responded to a radio call of a purse snatching in the 700 block of Eleonore Street. The Detective further testified that an apprehension dog was dispatched to the scene to locate and remove the perpetrator from under the house where he was being held at bay.
The parties stipulated to the statement of Joseph Bouvier, an officer with the New Orleans Police Department, that he handled the apprehension dog used on the scene to locate and apprehend the perpetrator.
Earlette Lucas testified that she picked the defendant up from his home on Apple Street about seven forty-five on the evening of 18 January 1998 drove him to the Westbank in her car. They were unsuccessful in their attempt to locate defendant's cousin, and returned to the Eastbank. They went to the Snake and Jake Lounge where they remained until approximately 12:30 am.
Alvin Trimble testified that he ran into the defendant on 19 February 1998, Martin Luther King Day in the Lafitte Housing Development. The witness insisted that it was on the Martin Luther King holiday even though the holiday occurs in January, not February. Mr. Trimble testified that the defendant offered to show him his wedding pictures, so they walked to Canal Street to take the bus to the defendant's home. Mr. Trimble testified that when he and the defendant exited the bus on Magazine Street, they were approached by a group of young white men who began yelling at them and using racial slurs. According to Mr. Trimble, as he and the defendant approached the group responding with insults of their own, the group retreated and returned carrying sticks and baseball bats, whereupon he and the defendant ran, and the group gave chase. Mr. Trimble and the defendant ran in different directions.
*1155 Plunk Singleton, the defendant's father, testified that his son owned a functioning automobile, and also had access to other vehicles belonging to other family members so he did not have to steal someone else's car. Mr. Singleton also testified that his son was employed before his arrest.

ERRORS PATENT
A review of the record for errors patent revealed none.
FIRST AND SECOND ASSIGNMENTS OF ERROR: The evidence was insufficient to sustain the first-degree robbery and attempted carjacking convictions; the trial court erred in its denial of mistrial because the verdict was contrary to the law and evidence.
The standard for reviewing a claim of insufficient evidence is whether after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found all of the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Rosiere, 488 So.2d 965 (La.1986). The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305, 1310 (La.1988). The reviewing court is not called upon to decide whether it believes the witnesses unless the trier of fact's findings is contrary to the evidence. See, State v. Cashen, 544 So.2d 1268, 1275 (La.App. 4 Cir.1989). The trier of fact's determination of credibility is not to be disturbed on appeal absent an abuse of discretion. Id.
When circumstantial evidence forms the basis of the conviction, such evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. La. R.S. 14:64.1(A) defines first degree robbery as follows:
First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by the use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.
The defendant argues that the state proved only that he was guilty of simple robbery because it did not establish that Miss McKendrick believed that he was armed. According to the defendant, Miss McKendrick never saw a weapon, therefore she could not reasonably believe that he was armed.
In order to support a conviction for first degree robbery the state must prove that the offender induced a subjective belief that he was armed with a dangerous weapon and the victim's belief was objectively reasonable under the circumstance. State v. Fortune, 608 So.2d 148, 149 (La. 1992).
Direct testimony by the victim that he believed the defendant was armed or circumstantial inferences arising from the victim's immediate surrender of his personal possessions in response to the defendant's threats may support a conviction for first degree robbery. Id.
Karen McKendrick testified on direct examination that the defendant approached her pointing something at her, and when asked if she believed he was armed she replied yes. A rational trier of fact could have easily inferred that the victim allowed the defendant to rob her of her bag because she believed that he was armed with a dangerous weapon. Viewing the evidence in the light most favorable to *1156 the prosecution, it appears that a rational trier of fact could have found the defendant guilty of first degree robbery beyond a reasonable doubt.
The defendant also claims the evidence is insufficient to support his attempted carjacking conviction.
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. La. R.S. 14:27(A)
Carjacking is the intentional taking of a motor vehicle, as defined in R.S. 32:1(40), belonging to another person, in the presence of that person, or in the presence of a passenger, or any other person in lawful possession of the motor vehicle, by use of force or intimidation. La. R.S. 14:64.2(A)
To support a conviction for an attempt the state must prove that the defendant had the specific intent to commit the crime and did or omitted some act toward accomplishing his goal. State v. McGee, 98-2116 p. 10 (La.App. 4 Cir. 2/23/00), 98-2124 (La.App. 4 Cir. 2/23/00), 757 So.2d 50, 58, writ denied, XXXX-XXXX (La.10/27/00), 772 So.2d 121, petition for certiorari filed, No.XXXX-XXXX (1/25/2001). Specific intent may be inferred from the circumstances of the transaction and the actions and/or inaction of the defendant. State v. Doby, 540 So.2d 1008, 1011 (La. App. 2 Cir.1989).
Ann Lind, the attempted carjacking victim, testified that the defendant grabbed her purse and entered her vehicle as she was exiting the vehicle. She further testified that the defendant exited the vehicle, and demanded that she give it to him. Mrs. Lind assumed because the car key was the only thing she had that it was the "it" to which the defendant referred.
The defendant approached the victim, entered her vehicle, exited the vehicle, and demanded the key. It can be inferred from the circumstances of the encounter between Mrs. Lind and the defendant that the defendant possessed the specific intent to take her car, and did an act in furtherance of the offense to support the conviction for attempted carjacking. Therefore, the evidence presented was sufficient to support the convictions and the verdicts were not contrary to the law and the evidence. These assignments of error are without merit.
THIRD AND FOURTH ASSIGNMENTS OF ERROR: The trial court erred in denying his motions for mistrial because (1) the state failed to give the defendant a copy of a supplemental police report made when Karen McKendrick reported that her wallet and driver's license were found and returned to her; and (2) the defendant's trial counsel stated on the record he should have filed a motion to have the two counts against his client severed.
La.C.Cr.P. art. 775 provides in pertinent part:
Mistrial may be ordered, and in a jury case the jury dismissed, when:
... (3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
... (5) It is physically impossible to proceed with the trial in conformity with law;
Upon motion of the defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside of the courtroom makes it impossible for the defendant to obtain a *1157 fair trial, or when authorized by Articles 770 or 771.
The defendant argues that the state failed to comply with the continuing duty to disclose found in La.C.Cr.P. art. 729.3 by not notifying the defendant of the retrieval and return of Karen McKendrick's wallet. As a result, the defendant argued a mistrial was the appropriate sanction governed by La.C.Cr.P. art. 729.5 for failure to comply.
To comport with the dictates of the due process clause of the Fourteenth Amendment, the state must disclose to the defense evidence that is material to guilt or punishment. State v. Thomas, 99-1658 p. 9 (La.App. 4 Cir. 12/22/99), 750 So.2d 1114, 1122, citing Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The prosecutor is required only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial, that is evidence favorable to the defendant which is material to guilt or punishment. Thomas, supra at p. 10, 750 So.2d at 1122.
Evidence is material only if it is reasonably probable that the result of the proceeding would have been different had the evidence been disclosed to the defense. U.S. v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). A reasonable probability is one, which is sufficient to undermine confidence in the outcome. Id.
The defendant must show prejudice in order for his conviction to be reversed. Sanctions for failure to comply with discovery motions are solely within the discretion of the trial judge, and reversal is warranted only when there is an abuse of discretion and prejudice is shown. State v. Morris, 28,312 p. 5 (La.App. 2 Cir. 8/21/96), 679 So.2d 482, 484.
In State v. Taylor, 597 So.2d 123 (La. App. 5 Cir.1992), the state did not turn over a police report to defense counsel during open-file discovery because it was not part of the state's file at the time. The Fifth Circuit held that the trial judge's order to the state to produce a copy of the police report for defense counsel's immediate inspection, and a recess, which allowed defense counsel time to review the report, cured the state's lapse in discovery. The court further stated that the trial court had not committed reversible error in its denial of the motion for mistrial.
In the instant case, like Taylor, the state did not give defense counsel a copy of the subsequent police report, making defendant aware that the victim's property had been returned, because it was not part of the state's file at the time. Also, the trial judge ordered the state to produce a copy for defense counsel's immediate review. The trial judge granted a recess to allow defense counsel time to review the report and defense counsel was also allowed to re-cross examine the officer who wrote the supplemental report. We find no prejudice to the defendant under these facts. The trial judge did not abuse his discretion by not granting a mistrial. Furthermore, defendant has not shown on this record that the supplemental report noting the recovery of Miss McKendrick's purse under a nearby house was in any way exculpatory.
The defendant also complains the trial court erred by not granting a mistrial when defense counsel admitted on the record he failed to seek a severance of the counts against the defendant. The defendant's claim amounts to one of ineffective assistance of counsel.
This issue is properly raised by an application for post-conviction relief; filed in the trial court where a full evidentiary hearing can be conducted. However, where, as here, the record discloses sufficient *1158 evidence to rule on the merits of the claim, the interests of judicial economy justify consideration of the issue on appeal. State v. Jason, 99-2551 p. 8 (La.App. 4 Cir. 12/6/00), 779 So.2d 865, 870-71. Citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this court held that the claim of ineffective assistance of counsel is to be assessed by the two part Strickland test. Id. The defendant must show that his counsel's performance was deficient and that the deficiency prejudiced him. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Id. Counsel's deficient performance will have prejudiced the defendant if he can show that the errors were so serious as to deprive him of a fair trial. To carry this burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., citing Strickland.
In State v. Carter, 99-2234 pp. 34-35 (La.App. 4 Cir. 1/24/01), 779 So.2d 125, 146, this court held that whether a motion to sever should be granted rests within the sound discretion of the trial court whose decision will not be disturbed on appeal absent a showing of abuse of that discretion. In Carter, no motion to sever was filed. However, this court further stated that assuming the court felt a danger of prejudice existed to the defendant, it could have ordered separate trials. Generally, there is no prejudice and severance is not required if the facts of each offense are not complex, and there is little likelihood that the jury will be confused by the evidence of more than one crime. State v. Lewis, 557 So.2d 980, 984 (La.App. 4 Cir.1990).
In instant case, as in Carter, defense counsel did not file a motion to sever, and the trial court presumably saw no prejudice to the defendant by the joinder of the two counts. We note that the facts for each count were presented in an orderly fashion, and were not complex. There was no likelihood that the jury was confused by the presentation of the two separate and unrelated events in the same proceeding. Therefore, defense counsel's failure to seek severance of the two counts was not a deficiency that rose to the level of error that prejudiced the defendant. Without prejudice the trial court did not err in denying the mistrial. These assignments of error are without merit.
FIFTH AND SIXTH ASSIGNMENTS OF ERROR: The sentences of fifty years for first-degree robbery and of eight years for attempted carjacking are excessive; the trial court erred in its denial of the defendant's motion to reconsider the sentences because they were excessive.
Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). A sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the needless and purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Lobato, 603 So.2d 739, 751 (La.1992).
Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in *1159 light of the particular circumstances of the case. See, State v. Soco, 441 So.2d 719, 720 (La.1983).
If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violator of the offense so charged. State v. Quebedeaux, 424 So.2d 1009, 1014 (La.1982).
In State v. Jackson, 31,849 (La.App. 2 Cir. 3/31/99) 734 So.2d 54, the court affirmed a fifty year sentence at hard labor without benefit of probation, parole, or suspension of sentence for first degree robbery for an unemployed twenty-six year old defendant who had amassed forty-two charges during his adult life time and was a second felony offender.
In State v. Jones, 33,657 (La.App. 2 Cir. 8/23/00), 765 So.2d 1191, the court affirmed a mandatory life sentence for a third felony offender convicted of attempted carjacking.
The trial court, when sentencing the defendant, noted that the minimum sentence for first degree robbery is twenty years and the maximum is eighty and imposed a sentence of fifty years. The trial court also noted that the maximum sentence for attempted carjacking is ten years, and imposed an eight year sentence. The trial court considered the defendant's predicate offenses of theft over five hundred dollars, misdemeanor battery on a police officer, and a misdemeanor possession of drug paraphernalia which was upgraded to possession of cocaine. Because these offenses arose out of two separate, unrelated events, the imposition of consecutive sentences was proper. La.C.Cr.P. art. 883. The trial judge did not abuse the liberal discretion allowed in sentencing. Therefore, these assignments of error are without merit.
Because the trial judge did not abuse the discretion allowed in sentencing, he did not err in denying the defendant's motion to reconsider the sentences.
SEVENTH ASSIGNMENT OF ERROR: the trial court erred in its denial of the defendant's motion to enforce a plea agreement.
The defendant alleges that prior to the commencement of trial in the instant matter, defendant's trial counsel and the state agreed that the defendant would plead guilty and that the state would recommend that the trial court sentence the defendant to fifteen years at hard labor.
In State v. Anthony, 99-0107 p. 5 (La.App. 4 Cir. 4/27/99), 735 So.2d 746, 749, we noted that the Louisiana Supreme Court views plea agreements as contracts between the state and the defendant; generally referring to the rules of contract law for application by analogy. Commercial contract law can serve only by analogy because plea agreements are constitutional contracts and must be construed in light of the right and obligations created by the constitution. Id.
The state is free to withdraw from the plea agreement up until the time the plea is entered absent any showing of detrimental reliance prejudicial to substantial rights of the defendant or evidence of devious practices by the state such as bad-faith negotiations aimed at gaining an improper advantage. Id., citing State v. Caminita, 411 So.2d 13 (La.1982).
In the instant case the state acknowledged that there were preliminary discussions of a plea agreement, but the discussion never reached the point of a definitive term of sentence. In contract *1160 terms, the state alleges there was no meeting of the minds. Defendant's appellate counsel acknowledges that there is insufficient evidence in the record to support the fact that a plea agreement existed. Therefore, this assignment of error is without merit.

CONCLUSION
For the foregoing reasons, the defendant's convictions and sentences are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.
PLOTKIN, J., dissents in part.
PLOTKIN, J., dissents in part.
I join the majority affirming the conviction and sentence, but would do so only conditionally because of the issue of the plea bargain agreement between the defendant and the State, before trial, for a 15 year sentence, may have a reasonable basis.
The record reveals that there was a disagreement between the parties as to the existence of the pea agreement. Mr. Wainwright, counsel for the defendant, contends that the Assistant District Attorney, Ms. Lynda Davis told him that a 15 year plea agreement had been approved in this case on the day before Good Friday. Mr. Wainwright discussed the idea of a 15 year plea with his client and the client's family. On the Monday before the trial defense counsel called and left a message for Ms. Davis saying they would be pleading the case out in the morning for 15 years. Mr. Wainwright testified he received a message saying "see you in the morning, Gary" with no indication that the 15 year agreement was not accepted. Mr. Wainwright said that he did not contact the trial judge regarding the plea agreement since this transpired during the Easter holiday period.
Subsequently, Mr. Wainwright requested an in camera inspection of the district attorney's file so that it could be copied, sealed and made a part of the record on appeal. However, this was denied by the trial judge. ADA Davis claims that there had been discussions about a plea agreement but states that the parties had not settled on a particular amount of time.
Recently, the Louisiana Supreme Court, in State v. Trahan, 99-3470 (La.10/5/2001), 797 So.2d 38, granted a retrial to a defendant, who pled guilty, who anticipated a lesser sentence, which was increased after presentence investigation, the Court stated, "if the Court determines that the trial judge and relator in fact entered into a conditional plea bargain premised on the anticipated results of the pre-sentence investigation...." Although this defendant does not contend he entered into a plea bargain agreement with the court, he does claim that an agreement existed with the State, which should have been submitted to the court for acceptance. There is sufficient evidence in the record to conclude that a plea bargain discussion occurred, but insufficient to determine whether it rose to the level of a plea agreement.
Accordingly, I would remand this case for an evidentiary hearing as to whether a plea bargain agreement actually existed on the day of trial. If so, the defendant is entitled to have his conviction and sentence vacated and the plea bargain agreement substituted in lieu of the 58 years sentences that are to run consecutively without the benefit of probation, parole or suspension of sentence.