DREW, J.
|!Bobbie Louis Taylor, Jr., was convicted by a unanimous jury of attempted carjacking, in violation of La. R.S. 14:64.2 and 14:27. He was sentenced to the maximum 10 years at hard labor, without benefits. He appeals his conviction and sentence. We affirm in all respects.

FACTS

On January 20, 2012, the defendant jumped into a truck driven by Jody Wallace, and unsuccessfully attempted to take the truck.
We highlight here the testimony at trial.
(1) Jody Wallace testified that:
• during the early evening of January 20, 2010, at 7:30 p.m., while delivering pizzas, he stopped at a street corner in West Monroe;
• Taylor suddenly appeared, opened the passenger door, and attempted to get into his truck;
*519 • he accelerated to prevent Taylor’s entry, but Taylor ran alongside the truck, jumped in the passenger side, and told him, “I want the sugar”;
• Taylor lunged toward him with his hands extended in front of him;
• he elbowed Taylor and pushed him away, while stopping the truck;
• he put the truck into park and retrieved a hidden .22 caliber pistol;
• he turned off the engine, tried to remove the keys, and exited the truck;
• he dropped his ignition key, then reentered to retrieve it;
• Taylor grabbed him by the shirt and tried to pull him back into the truck;
• he fell to the ground, then got up and walked to the front side of the truck;
• he ordered Taylor to get out of the truck;
• Taylor was in the driver’s seat “fiddling around with something”;
| ⅞* after two demands to exit the truck, he pointed the pistol at Taylor;
• Taylor exited the vehicle;
• he told Taylor that he would shoot him if he came toward him;
• he then saw Taylor get into another car, which left the scene;
• Taylor never asked for medical attention or for a ride to the hospital;
• he testified that he felt that Taylor was attempting to hurt him when he lunged at his throat with both hands going toward his neck; and
• he identified the defendant in open court.
(2) Officer Jacob May of the West Monroe Police Department testified that:
• as he patrolled Interstate 20 that evening, he observed a vehicle that had been driven into the center divider wall of the eastbound lane;
• a black male with dreadlocks and wearing a black T-shirt was sitting near the car;
• when he returned to the site, the man was gone and the car abandoned;
• he did not see the man again until later that evening at Glenwood Hospital, when he took custody of Taylor; and
• he identified the defendant in court as the man he saw by the car on the interstate.
(3) Officer Lawrence Moore of the West Monroe Police Department testified that:
• on the evening in question, he helped investigate the 1-20 accident;
• a man matching the description provided by Officer May was located outside Glen-wood Hospital, arguing with hospital security officers;
• Taylor took off running, but he and the security staff caught him;
• Taylor did not have any apparent physical injuries;
• Taylor physically resisted arrest and was noncompliant; and
Is* he transported Taylor to the West Monroe Correctional Center, but did not take Taylor’s statement.
(4) Jody Wallace was recalled to the stand by the defendant, and testified that:
• he did not recall telling officers that Taylor had asked him for tea and rice;
• when he pulled his taped key from the ignition, it broke; and
• Taylor got into a car with a blonde-haired white lady, and they drove away.
(5) Betty Rose Allen testified that:
• on the evening in question, she saw a truck parked on the side of the street and two men standing outside the truck;
• she did not recall which of them flagged her down, but when she stopped, one of *520 them got into her car and begged her to take him to the hospital;
• he was not aggressive or threatening, and he did not touch her;
• she saw no injuries on the man, but it was dark and raining outside;
• she drove him to the hospital;
• he jumped out and ran toward the building; and
• she is not a white lady -with blonde hair.
(6) Officer Kevin Howland of the West Monroe Police Department testified that:
• Wallace told him that Taylor came at him from the passenger side and grabbed him by the shoulder; and
• Wallace described a blonde female driver of the vehicle that took off with Taylor as a passenger.
The jury returned a unanimous verdict of guilty as charged of attempted carjacking. A presentence investigation report was ordered.
14At sentencing, the trial court stated that:
• the case file, the presentence investigation report, the guidelines of La. C. Cr. P. art. 894.1, and all submissions by the defendant had been reviewed;
• the defendant’s P.S.I. revealed an extensive criminal history;[1]
• this being Taylor’s third felony conviction, he was ineligible for probation;
• La. C. Cr. P. arts. 894.1(A)(2), 894.1(A)(3), and 894.1(B)(6) applied;
• Taylor was in need of correctional treatment in a custodial environment;
any lesser sentence would deprecate the seriousness of the crime committed;
• Taylor had used actual threats of violence in committing his offense;
*521 • no mitigating factors under La. C. Cr. P. art. 894.1(B) were applicable; and
• it had reviewed Taylor’s social, educational, and employment history.
Taylor urges in brief that he is not guilty and that he was only trying to get to the hospital to obtain help.
The trial court found that despite the prior showings of leniency, including terms of probation and parole, Taylor kept breaking the law.
Taylor was ordered to serve 10 years at hard labor, without benefit of probation, parole, or suspension of sentence, consecutive to any other current sentence. The offense was designated as a crime of violence under La. R.S. 14:2(B)(28), and Taylor was advised of his rights and the time limits to file for appeal and post-conviction relief. Defendant’s objection to the sentence was noted. He was granted an out-of-time appeal.

DISCUSSION

Sufficiency

Defendant argues that the state failed to meet the burden established in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), to show that the evidence was sufficient to support Taylor’s conviction for attempted carjacking. In particular, Taylor claims that the state failed to prove that he had specific intent to take Wallace’s truck. Defendant urges, in brief only, that he was dazed and injured from his ^automobile accident, and was simply seeking medical help from Wallace, who instead dragged him down the road.
The state responds that the evidence was sufficient for conviction.
Our law on sufficiency is well settled.[2]
*522 17Taylor was found guilty as charged for the crime of attempted carjacking, a violation of La. R.S. 14:64.2 and La. R.S. 14:27.[3]
Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); State v. Davies, 35,783 (La.App.2d. Cir.4/5/02), 813 So.2d 1262, writ denied, 2002-1564 (La.5/9/03), 843 So.2d 389.

Four Helpful Cases

In State v. Jones, 33,657 (La.App.2d Cir.8/23/00), 765 So.2d 1191, writ denied, 2000-2779 (La.6/29/01), 794 So.2d 825, this court affirmed a conviction for attempted carjacking where the defendant entered the passenger side of a van, telling the owner to drive or be killed. A struggle 1 ^occurred, and the defendant attempted to drive off, once the owner fell out of the van.
The Fourth Circuit affirmed an attempted carjacking conviction on analogous facts in State v. Singleton, 2001-0282 (La.App.4th Cir.11/7/01), 801 So.2d 1150, writ denied, 2001-3170 (La.9/20/02), 825 So.2d 1168. In Singleton, the defendant grabbed the victim’s purse and entered her vehicle as she was exiting the vehicle. As the defendant got out of the victim’s vehicle, he demanded that she give “it” to him.
In State v. Ordodi, 2006-0207 (La.11/29/06), 946 So.2d 654, the Louisiana *523 Supreme Court reversed the Third Circuit’s reversal of a conviction for attempted carjacking, stating, “We cannot say that the jury’s determination is irrational under the facts and circumstances presented to them[J”
The Third Circuit affirmed an attempted carjacking conviction on similar grounds in State v. Baylor, 2008-141 (La.App.3d Cir.11/26/08), 998 So.2d 800, writ denied, 2009-0275 (La.11/20/09), 25 So.3d 795, where the defendant jumped partially through the window of the victim’s vehicle, yelling, “Go-Go-Go.” There was no struggle, no threat, and no weapon. Baylor’s feet never entered the victim’s car. The only physical contact may have been incidental to Baylor’s momentum, as he attempted to jump through the window.
Taylor’s specific intent to take the truck can be inferred from his actions:
la* in getting into a stranger’s vehicle, uninvited and without any indication of emergency or need for help, even after the driver accelerated down the road;
• in attacking the driver; and
• in refusing to get out of the vehicle until the driver pointed a gun at him.
Regardless of his reason for wanting the vehicle, Taylor clearly attempted to take Wallace’s vehicle from his immediate possession by threat of force and intimidation. Taylor wanted the vehicle and he acted in a violent manner to accomplish that goal. The jury apparently found Jody Wallace’s testimony credible. There is no manifest error in this record.
Though Taylor argues in brief that he was only seeking medical help, he never asked Wallace for help, despite being able to speak, and he never indicated to Wallace that he was injured. After the other driver took him to the hospital, he was uncooperative and ran from police instead of seeking medical attention.
Even if Taylor was merely seeking transportation to the hospital, a conclusion not buttressed by this record, this possibility would prove nothing more than motive.
Considering the above testimony and evidence, a rational trier of fact could have concluded beyond a reasonable doubt that Taylor specifically intended to violently steal Wallace’s truck from him and therefore was guilty of attempted carjacking.

Excessiveness

The defense argues that Taylor was not the most egregious and blameworthy of those who have committed attempted carjacking, nor was |inthis incident the most egregious instance of attempted carjacking, yet he was sentenced to the maximum allowed under the statute. The defense maintains that Taylor was an unarmed man reacting to a traumatic situation and trying to get a ride to the hospital, and that such circumstances do not warrant a maximum 10-year sentence.
The state responds that the trial judge reviewed the entire record and the presen-tence investigation report, considered both aggravating and mitigating circumstances, and thoroughly articulated his reasons for the sentence imposed. Taylor’s extensive felony record was noted by the trial court. The state asserts that the record amply supports the sentence imposed and that the trial judge did not abuse his discretion in the sentence imposed.
Our law on the review of exces-siveness claims is well settled.[4]
*524 La. R.S. 14:64.2 mandates that a person found guilty of carjacking shall be imprisoned at hard labor from two to 20 years, without benefit of parole, probation, or suspension of sentence. Taylor was convicted of attempted carjacking, subjecting him to be sentenced in the same manner as the offense attempted, but with the sentencing range reduced to half the longest sentence available, in this case, from zero to 10 years at hard labor, without benefits.
No motion to reconsider sentence was filed, narrowing our review to that of constitutional excessiveness.[5]
We are not shocked by this maximum sentence. Taylor has shown that he is not deterred by rules or laws. Given his extensive disregard for the criminal laws of this state, the maximum sentence imposed is proportionate for his latest crime. Taylor has failed to show that the trial judge abused his discretion in any way.

*525
\ ^DECREE

The defendant’s conviction and sentence are AFFIRMED.

. Taylor’s criminal history was detailed as follows:
(1) On May 2, 1996, Taylor pled guilty to illegal possession of stolen things, while charges of theft by unauthorized use of an access card and resisting an officer were dropped. He was sentenced to serve 30 days in jail, suspended, and supervised probation for two years.
(2) On November 17, 1998, Taylor was convicted of distribution of a schedule II controlled dangerous substance (cocaine) and sentenced to one and a half years’ imprisonment.
(3) On December 7, 1998, Taylor was convicted of possession of a schedule II controlled dangerous substance (cocaine) and sentenced to four years’ imprisonment. Also in 1998, Taylor received 24 months’ misdemeanor probation in California for carrying a concealed weapon; charges of possession of a controlled dangerous substance and carrying a loaded firearm in a public place were dismissed. This probation was unsatisfactorily terminated on January 25, 2003.
(4) On February 7, 2005, Taylor attempted armed robbery of one woman and threatened to kill another woman before fleeing from police officers. During this chase he ran stop signs, exceeded speeds of 100 miles per hour, ran other vehicles off the road, and rammed multiple police vehicles. On August 5, 2005, facing 11 separate charges, Taylor was allowed to plead guilty to one count of aggravated flight from an officer and one count of aggravated criminal damage to property. The following charges were dismissed: additional counts of aggravated flight from an officer and aggravated criminal damage to property, one count of attempted armed robbery, one count of possession of a firearm by a convicted felon, two counts of filing and maintaining false public records, and three counts of hit and run. Charges not pursued included one count of battery of a police officer, one count of possession of marijuana, one count of open container, one count of no insurance, and one count of possession of drug paraphernalia. On October 31, 2005, he was sentenced to two years' imprisonment at hard labor for the aggravated flight and five years' imprisonment at hard labor for the aggravated criminal damage to property, with the sentences to run concurrent. Taylor was on parole for these convictions at the time he committed the current offense, and his parole was revoked on February 11, 2010.

. When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181, writ denied, 2008-0499 (La. 11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833, writ denied, 2009-0310 (La.11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 2009-0725 (La.12/11/09), 23 So.3d 913; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529. Direct evidence provides proof of the existence of a fact, for example, a witness's testimony that he saw or heard something. State v. Lilly, 468 So.2d 1154 (La.1985). Circumstantial evidence provides proof of collateral facts and circumstances, *522 from which the existence of the main fact may be inferred according to reason and common experience. Id. The trier of fact is charged with weighing the credibility of this evidence and on review, the same standard as in Jackson v. Virginia is applied, giving great deference to the fact finder’s conclusions. Id.
When the state relies on circumstantial evidence to establish the existence of an essential element of a crime, the court must assume every fact that the evidence tends to prove and the circumstantial evidence must exclude every reasonable hypothesis of innocence. La. R.S. 14:438; State v. Lilly, supra.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La.11/6/09), 21 So.3d 299; State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, and 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,-032 (La.App.2d Cir.2/13/08), 975 So.2d 753; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35.
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 1999-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).

. The text of the two charged statutes reads as follows:
Carjacking is the intentional taking of a motor vehicle, as defined in La. R.S. 32:1(40), belonging to another person, in the presence of that person, or in the presence of a passenger, or any other person in lawful possession of the motor vehicle, by the use of force or intimidation. La. R.S. 14:64.2.
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. La. R.S. 14:27.

. A sentence is reviewed by examining whether the trial court abused its discretion in sentencing and whether the sentence is constitutionally excessive. State v. Gardner, 46,-688 (La.App.2d Cir.11/2/11), 77 So.3d 1052. The trial court has wide discretion in impos *524 ing a sentence within minimum and maximum limits allowed by the statute, and such a sentence will not be set aside as excessive unless the defendant shows the trial court abused its discretion. State v. Hardy, 39,233 (La.App.2d Cir.1/26/05), 892 So.2d 710; State v. Young, 46,575 (La.App.2d Cir.9/21/11), 73 So.3d 473, writ denied, 2011-2304 (La.3/9/12), 84 So.3d 550. The reviewing court does not determine whether another sentence would have been more appropriate, only whether the trial court abused its discretion. State v. Esque, 46,515 (La.App.2d Cir.9/21/11), 73 So.3d 1021, writ denied, 2011-2347 (La.3/9/12), 84 So.3d 551.
A review of the sentencing guidelines in La. C. Cr. P. art. 894.1 does not require a listing of every aggravating or mitigating circumstance; the trial court need only articulate a factual basis for the sentence. State v. Cunningham, 46,664 (La.App.2d Cir.11/2/11), 77 So.3d 477.
The defendant’s personal history and criminal record, as well as the seriousness of the offense are some of the elements considered, but the trial court is not required to weigh any specific matters over other matters. State v. Moton, 46,607 (La.App.2d Cir.9/21/11), 73 So.3d 503, writ denied, 2011-2288 (La.3/30/12), 85 So.3d 113; State v. Caldwell, 46,645 (La.App.2d Cir.9/21/11), 74 So.3d 248, writ denied, 2011-2348 (La.4/27/12), 86 So.3d 625. All convictions and all prior criminal activity may be considered, as well as other evidence normally excluded from the trial. State v. Platt, 43,708 (La.App.2d Cir.12/3/08), 998 So.2d 864, writ denied, 2009-0265 (La.11/6/09), 21 So.3d 305. Absent a defendant’s assertion that he was falsely or mistakenly charged with an offense, the sentencing court may consider a dismissed charge as part of the defendant’s criminal history, even when the dismissal forms part of the plea agreement. State v. Pamilton, 43,112 (La.App.2d Cir.3/19/08), 979 So.2d 648, writ denied, 2008-1381 (La.2/13/09), 999 So.2d 1145; State v. Daley, 459 So.2d 66 (La.App. 2d Cir. 1984), writ denied, 462 So.2d 1264 (1985).
A defendant’s lack of remorse is a proper sentencing consideration. State v. Birch, 43,-119 (La.App.2d Cir.3/19/08), 979 So.2d 643; State v. Robinson, 33,921 (La.App. 2d Cir. 11/01/00), 770 So.2d 868; State v. Shipp, 30,562 (La.App.2d Cir.4/8/98), 712 So.2d 230, writ denied, 98-1199 (La.9/25/98), 724 So.2d 775.
Maximum sentences are generally reserved for the worst offenses and offenders. State v. Taylor, 41,898 (La.App.2d Cir.4/4/07), 954 So.2d 804.
Under constitutional review, a sentence can be excessive, even when it falls within statutory guidelines, if the punishment is so grossly disproportionate to the severity of the crime that it shocks the sense of justice and serves no purpose other than to inflict needless pain and suffering. State v. Fatheree, 46,686 (La.App.2d Cir.11/2/11), 77 So.3d 1047.

. When a defendant fails to file a La.C.Cr.P. art. 881.1 motion to reconsider sentence the appellate court’s review is limited to the bare claim that the sentence is constitutionally excessive. State v. Mims, 619 So.2d 1059 (La.1993); State v. Duncan, 30,453 (La.App.2d Cir.2/25/98), 707 So.2d 164. Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense or shocking to the sense of justice. State v. Lobato, 603 So.2d 739 (La.1992).