STATE OF LOUISIANA

VERSUS

TONNY J BAUER

NO. 23-KA-447

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 20-2779, DIVISION "K"
HONORABLE ELLEN SHIRER KOVACH, JUDGE PRESIDING

October 30, 2024

**JOHN J. MOLAISON, JR.**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
John J. Molaison, Jr., and Scott U. Schlegel

<u>**CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH**</u>
<u>**INSTRUCTIONS**</u>
    **JJM**
    **FHW**
    **SUS**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
     Honorable Paul D. Connick, Jr.
     Thomas J. Butler
     Monique D. Nolan
     Carolyn Chkautovich
     Alyssa Aleman

COUNSEL FOR DEFENDANT/APPELLANT,
TONNY J BAUER
     Jane C. Hogan

**MOLAISON, J.**

The defendant, Tonny Bauer, appeals his conviction and sentence for carjacking. We affirm the conviction and sentence for the following reasons. We also remand the matter for the correction of errors patent.

## PROCEDURAL HISTORY

On June 22, 2020, the Jefferson Parish District Attorney's Office charged the defendant, Tonny Bauer, with one count of carjacking, a violation of La. R.S. 14:64.2. On June 23, 2020, the defendant pled not guilty. On May 19, 2021, the defendant was found competent to proceed to trial. The defendant changed his plea to not guilty and not guilty by reason of insanity, on February 10, 2022. The court held a second sanity hearing related to the defendant's competency at the time of the offense on August 10, 2022. At the hearing, the trial court accepted the parties' stipulation that the expert doctors would testify consistently with the finding in their report that the defendant was competent at the time of the offense.[1] The trial occurred on March 7 - 8, 2023, and a unanimous jury found the defendant guilty as charged. On March 22, 2023, the trial court denied the defendant's motions for a post-verdict judgment of acquittal and a new trial before sentencing him to ten (10) years at hard labor with credit for time served. On April 20, 2023, the defendant stipulated to being a second felony offender, and the trial court sentenced him to ten (10) years without the benefit of probation or suspension of sentence. The trial court denied the defendant's motion for reconsideration of the sentence. This timely appeal follows.

---

[1] The minute entry from the August 10, 2022 hearing incorrectly states that the trial court found the defendant "competent to proceed" again. However, according to the transcript, the only actions taken by the trial court were its recognition of the doctors as experts in forensic psychiatry, its acceptance of the expert report into evidence, and its acceptance of the parties' stipulation regarding the experts' testimony. The transcript prevails where there is an inconsistency between the minute entry and the transcript. *See State v. Lynch*, 441 So.2d 732, 734 (La. 1983).

**FACTS**

The victim in this matter, Daphne Campbell, who was 60 years old at the time of trial, testified that she drove herself to pick up pizza in Metairie on May 8, 2020, at approximately 8:00 p.m. While she parked her car and went into the Domino's pizza shop, Ms. Campbell saw a man, whom she later identified in court as the defendant, crouched down against a wall. Ms. Campbell testified that within two minutes, she had returned to her car and placed her purse and pizzas in the passenger seat. As she was backing out of the parking space, the defendant "limped" toward the hood of her car while holding his knee and appeared to use the hood on the passenger side for balance. Ms. Campbell stated that she tried to pull her car outside of what she thought was the defendant's path of travel. While doing so, the defendant ran and jumped into the passenger seat of her car while she unsuccessfully tried to lock the door. The defendant then tried to pull Ms. Campbell by the neck out of the driver's seat toward him. Next, the defendant laid across her and used his hand to press down on the gas pedal. Ms. Campbell stated that during the encounter, she thought that she was going to die. While the struggle with the defendant ensued, the car moved in a circle within the parking lot until it hit a small cement barrier. Ms. Campbell was able to jump out of her car at that time. After freeing herself, she watched the defendant try unsuccessfully to put the car into gear before he drove away.

Ms. Campbell testified that she went back into the pizza shop, and an employee immediately called the police. Approximately 40 minutes after reporting the carjacking, police informed Ms. Campbell that they located her car and the defendant. The police took her to the Causeway Bridge, where her car had been "totaled" at mile marker 8. At that time, she identified the defendant to the police as the person who had carjacked her.

On cross-examination, Ms. Campbell testified that the defendant never spoke to her during the struggle, and did not ask her for money. Her purse was in the car when it was recovered, along with a half-eaten pizza. Ms. Campbell did not recall that the defendant was wearing glasses on the evening of the carjacking.

On re-direct examination, Ms. Campbell clarified that although the defendant did not speak to her at the time, the defendant's actions indicated to her that he wanted to take her car.

Khristina Juneau testified that she was a general manager of Domino's Pizza in May 2020. She stated that the defendant was a regular customer who would visit the store two to three times a week, sometimes while walking his dog. Ms. Juneau recalled seeing the defendant sitting on a window sill on May 8, 2020. She testified that she saw Ms. Campbell get into her car and that the defendant pulled Ms. Campbell out and took her car. Ms. Campbell ran into the store screaming, and Ms. Juneau had an employee call the police. Ms. Campbell had a red mark on her body, which was presumably an injury from where the defendant had grabbed her. In speaking to police, Ms. Juneau identified the defendant based on what she believed was a mug shot. She had signed the back of the photo, which Ms. Juneau also identified in court.

Jefferson Parish Sheriff's Office ("JPSO") Sergeant Daniel Lassus testified that on March 8, 2020, he was assigned to the JPSO robbery division. On that date, he responded to a carjacking call at a strip mall in Metairie. When he first spoke with Ms. Campbell, she was visibly distraught, but she provided Sergeant Lassus with a description of the defendant and her vehicle. Ms. Juneau provided him with the defendant's name, Tonny Bauer. Police utilized an Automated License Plate Reader to detect that the car had passed through the intersection of Quincy Avenue and Clearview Parkway. JPSO placed a "be on the lookout" ("BOLO") alert for area law enforcement. In response to the BOLO, at 8:50 p.m.,

the Causeway Police Department reported that it was investigating a single-car accident involving Ms. Campbell's vehicle. Sergeant Lassus picked up Ms. Campbell from her residence and transported her to the scene. Ms. Campbell identified the defendant at that time, in a "show-up" procedure, as the person who had carjacked her. Sergeant Lassus identified the defendant in court as the person Ms. Campbell said had carjacked her. Ms. Campbell told Sergeant Lassus that the defendant had injured her neck during the carjacking.

On cross-examination, Sergeant Lassus explained that after the defendant crashed Ms. Campbell's vehicle into a retaining wall on the Causeway Bridge, all of Ms. Campbell's valuables remained in the vehicle. He also confirmed that the defendant did not arm himself with a weapon at the time of the carjacking. The Causeway Police were unable to locate any video footage of the crime. After being taken into custody, the defendant told Sergeant Lassus that "he had to get to safety."

Causeway Police Sergeant Colt Bruhl testified that he was a patrol officer in May 2020. On May 8, 2020, he responded to a single-vehicle crash on the Causeway Bridge. The defendant, who sat in the driver's seat, was confused and would not answer questions. The crashed black SUV the defendant was driving was the subject of an active BOLO alert. At one point, the defendant exited the vehicle and attempted to jump over the bridge railing, but Sergeant Bruhl and another officer pulled him back. Later, they learned the owner of the car was Ms. Campbell. Sergeant Bruhl identified the defendant in court as the person who had been driving the stolen vehicle.

On cross-examination, Sergeant Bruhl agreed that he wrote, "[t]he subject may have some possible mental issues" in his report.

After the state rested, the defendant called William Phillips as a witness. Mr. Phillips testified that he knew the defendant[2] and had gone to the defendant's home on May 9, 2020, to put his furniture into storage. He recalled that, upon arriving, it looked like the defendant's front door had been kicked off of its frame and would not close properly. Mr. Phillips admitted that he did not know how the door became damaged.

On cross-examination, Mr. Phillips testified that he had not been with the defendant on the night of May 8, 2020.

Errol Bloom, who was accepted as an expert in optometry, testified that he had treated the defendant on March 23, 2022. He described the defendant as "extremely nearsighted" and recalled writing an eyeglass prescription. Dr. Bloom opined that the defendant's nearsightedness likely developed when the defendant was five or six years old.

On cross-examination, Dr. Bloom testified that he did not know if the defendant had a prescription for contact lenses. He could not opine about what the defendant's ability to drive would be like without glasses on.

The defendant, Tonny Bauer, testified at trial after waiving his Fifth Amendment rights on the record. He admitted that he had previously pled guilty to illegal use of weapons, simple criminal damage to property valued at over $500, possession with intent to distribute methamphetamine while also being in possession of a firearm, attempted possession of a firearm by a convicted felon, and possession of heroin. The defendant also admitted to taking the car from Ms. Campbell on May 8, 2020. He claimed that a few weeks before the carjacking, a neighbor told him that two men were taking pictures of his house and "opened up" his residence. The defendant testified that on the night of the carjacking, he had been asleep on his couch when he heard the noise of someone breaking into his

_____

[2] Mr. Phillips stated that he was dating the defendant's sister at the time.

home. As a result, while "frightened for [his] life," he ran outside without his glasses or shoes and went across the street to a strip mall. He said that he did not have the intent to carjack anyone. The defendant then described that he was "in a sleep" during the time he took Ms. Campbell's car, and it was "like [he] was dreaming." In his dream, he was "being attacked." The defendant said he did not realize he was on the Causeway until shortly before he crashed. His stated purpose for taking Ms. Campbell's car was "to get to safety."

On cross-examination, the defendant admitted that he never saw the men he claimed were photographing his home. He never filed a police report about anyone stalking his home. He never saw any damage to the door or windows of his house. He admitted that he never called out for help once he made it across the street to the strip mall. The defendant said he carjacked Ms. Campbell because she had thrown her car into reverse and was trying to run him over. He did not deny that the car belonged to Ms. Campbell and that he took the car. He claimed that Ms. Campbell "attacked first."

After the defendant's testimony concluded, the state recalled Sergeant Lassus, who testified that on May 13, 2020, he went by the defendant's home to look for surveillance cameras that may have recorded evidence. At that time, he saw no evidence of a break-in on the door or windows.

## ASSIGNMENTS OF ERROR

The defendant raises the following assignments of error on appeal:

1. There is insufficient evidence to support Tonny Bauer's carjacking conviction.

2. Mr. Bauer's counsel rendered ineffective assistance of counsel by abandoning an insanity defense.

3. The trial court erroneously denied Mr. Bauer's motion to strike Elizabeth Kensel for cause.

4. The trial court erroneously permitted the state to question Tonny Bauer extensively about his prior convictions.

5.  The trial court abused its discretion when it failed to consider the sentencing guidelines of Article 894.1 and imposed an excessive sentence.

## LAW AND ANALYSIS

*Assignment of error one*

In his first assignment, the defendant contends that there is insufficient evidence to support his conviction of carjacking.

The appellate court should first review a claim of insufficient evidence when challenged on appeal, along with other assignments of error. *State v. Hearold*, 603 So.2d 731, 734 (La. 1992).  The relevant question when reviewing the sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

La. R.S. 14:64.2 provides:

> A. Carjacking is the intentional taking of a motor vehicle, as defined in R.S. 32:1(40), belonging to another person, in the presence of that person, or in the presence of a passenger, or any other person in lawful possession of the motor vehicle, by the use of force or intimidation.

Thus, the elements of carjacking are

(1) the intentional taking,

(2) of a motor vehicle, as defined in R.S. 32:1(40),

(3) belonging to another person,

(4) in the presence of that person, or in the presence of a passenger, or

any other person in lawful possession of the motor vehicle,

(5) by the use of force or intimidation.

*State v. Edwards*, 52,755 (La. App. 2 Cir. 6/26/19), 277 So.3d 1223, 1233, *writ denied*, 19-1409 (La. 7/17/20), 298 So.3d 171.

At trial, the defendant admitted to taking a vehicle that Ms. Campbell owned while she was sitting in the driver's seat. He admitted that at no time did he ask Ms. Campbell for assistance or tell her that he needed help. While the defendant conceded that he used force to take Ms. Campbell's vehicle while she was driving, at trial, he insinuated it was because Ms. Campbell first attacked him. On appeal, the defendant argues the state failed to prove that he *intended* to take Ms. Campbell's vehicle through force and intimidation.

Concerning the element of intent, Mr. Bauer testified to his subjective belief that his life was in danger. La. R.S. 14:64.2 does not provide an exception for specific motivations behind carjacking. Louisiana courts have rejected similar arguments on appeal in cases where a defendant argued he committed a carjacking to flee danger[3] or was seeking medical attention.[4] The defendant's argument that "force" and "intimidation" cannot be accomplished without being armed lacks merit. La. R.S. 14:64.2 does not require evidence that the defendant was armed to constitute the crime of carjacking.

In this case, the defendant literally forced his way into Ms. Campbell's vehicle, grabbed her by the neck, and physically seized control of the car from her. As a result of these actions, Ms. Campbell feared the defendant would kill her. In other words, she was intimidated into abandoning the vehicle to save her life. Although he admitted to almost all of the elements of

---

[3] *State v. Baker*, 49,841 (La. App. 2 Cir. 5/20/15), 166 So.3d 1152, 1163, *writ denied*, 15-1219 (La. 3/4/16), 185 So.3d 745.

[4] *State v. Taylor*, 47,267 (La. App. 2 Cir. 8/8/12), 103 So.3d 517, 521-23.

carjacking, the defendant testified at trial that he lacked the intent to do so. The jury apparently found the defendant not to be a credible witness.

After viewing the evidence in the light most favorable to the prosecution, we find the state proved all of the elements of carjacking and that the evidence supports the defendant's conviction. *See State v. Baker*, 49,841 (La. App. 2 Cir. 5/20/15), 166 So.3d 1152, 1163, *writ denied*, 15-1219 (La. 3/4/16), 185 So.3d 745. This assignment is without merit.

*Assignment of error two*

The defendant next argues that his trial counsel was ineffective by abandoning an insanity defense, failing to obtain an independent evaluation, and by failing to present evidence of his alleged mental illness to the jury.

The court appointed a sanity commission and ordered Drs. Rafael Salcedo and Richard Richoux to conduct a competency evaluation of the defendant. In an April 28, 2021 letter, they opined that the defendant was competent to proceed to trial based upon their assessment of him. The trial court held a sanity commission hearing on May 19, 2021, and adopted those competency findings. On February 10, 2022, Mr. Bauer entered pleas of "not guilty" and "not guilty by reason of insanity." Drs. Richoux and Sarah DeLand concluded in a letter dated August 8, 2022, that "to a reasonable degree of medical certainty… Mr. Bauer was able to distinguish right from wrong at the time of the alleged offense." On August 10, 2022, the trial court accepted the parties' stipulation that the doctors would testify consistently with this finding in their report. However, defense counsel made it clear that he was only stipulating to the content of the report, not the correctness of the finding.

Under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution, a defendant is entitled to effective assistance of counsel. *State v. Taylor*, 18-126 (La. App. 5 Cir. 10/17/18), 258 So.3d 217, 227,

*writ denied*, 18-1914 (La. 5/20/19), 271 So.3d 200. The Sixth Amendment does not guarantee errorless counsel or counsel judged ineffective by hindsight but counsel reasonably likely to render effective assistance. *State v. Howard*, 09-928, (La. App. 5 Cir. 5/25/10), 37 So.3d 1099, 1106. A claim of ineffective assistance of counsel must satisfy the two-prong test showing that counsel's performance was deficient and that the deficiency prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Counsel's performance is deficient when it falls below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases as evaluated from the counsel's perspective at the time of the occurrence. *Id*. at 689-90. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so severe as to deprive him of a fair trial. *Id*. at 687. To carry his burden, the defendant must show that there is a reasonable probability that the trial's outcome would have been different for the counsel's unprofessional errors. *Id*. at 694.

Louisiana courts have addressed similar ineffective assistance of counsel claims on appeal in situations where more extensive pre-trial evidentiary hearings were conducted regarding the defendant's sanity. *See State ex rel. Busby v. Butler*, 538 So.2d 164, 168 (La. 1988)(the court determined that "even the most favorable interpretation of [the defendant's] psychiatric records would not have shown him insane under Louisiana law."). However, in this case, the parties stipulated to the expert reports and there is no other evidence regarding whether the defendant was incompetent to proceed to trial or could not distinguish right from wrong at the time of the offense.

The defense counsel's choice between a plea of not guilty instead of not guilty and not guilty by reason of insanity and the decision to call certain witnesses or present specific evidence at trial are strategic decisions that cannot "possibly be

reviewed on appeal." *State v. Martin*, 607 So. 2d 775, 788 (La. App. 1 Cir. 1992).

Decisions relating to investigation, preparation, and strategy require an evidentiary

hearing. *State v. Wise*, 13-247 (La. App. 5 Cir. 11/19/13), 128 So.3d 1220, 1230,

*writ denied*, 14-253 (La. 9/12/14), 147 So.3d 703; *State v. Martin, supra.* An

application for post-conviction relief appropriately addresses a claim of ineffective

assistance of counsel. At that juncture, the trial court may conduct a full

evidentiary hearing, if appropriate. *State v. Ledet*, 20-258 (La. App. 5 Cir.

1/27/21), 310 So.3d 810, 822. Only in an evidentiary hearing in the trial court,

where the defendant can present evidence beyond an inadequate record, can his

allegations be sufficiently investigated. *See* La. C.Cr.P. art. 924, *et seq.*

We cannot determine whether ineffective assistance of counsel occurred on

the current record. This matter more appropriately lends itself to presenting

evidence at a post-conviction hearing if warranted. Accordingly, we will pretermit

the merits of this error assignment.

*Assignment of error three*

The defendant claims that the trial court erroneously denied Mr. Bauer's

motion to strike a prospective juror, Elizabeth Kensel, for cause after she stated

that she would "definitely take prior felony convictions into consideration." The

defendant argues that the error forced the use of a peremptory challenge to excuse

Ms. Kensel, "thereby prejudicing his right to effective voir dire and selection of a

fair and impartial jury."

The record shows that in the second panel of voir dire, the defense counsel

posed the following hypothetical question to the pool of potential jurors:

MR. SOMOZA:

> Good afternoon, folks. If a person
> is accused of a crime and that person has one or more
> prior felony convictions and that person chooses to
> take the witness stand, does the fact that he has one
> or more prior felony convictions, does that

necessarily mean that he's guilty of the offense
charged today?

Defense counsel later refined his question as follows:

MR. SOMOZA:

…So it's not just -- in fact, the
judge would instruct you not to just assume
automatically that the person were [sic] guilty simply
because of this or that or the other unless it's for
one of the stated purposes.  okay?  Does that change
your answer?

The juror at issue, Ms. Kensel, answered the defense counsel's question as follows:

JUROR KENSEL:

I mean, I would definitely do my
best to judge the person on what they are here for
today, but I would definitely take prior felony
convictions into consideration.  Especially if there
were multiple ones.

At a subsequent bench conference, defense counsel challenged Ms. Kensel for

cause.  The state offered the following rebuttal:

MS. CHKAUTOVICH:

Your Honor, I have written down
that Ms. Kensel said that she can judge based on this
today, meaning this particular case.  That she would
consider the priors, but she said she can judge based
on the facts in particular to this incident.

The trial judge referred to her notes and agreed with the state's assessment before

declining to grant the defendant's challenge to exclude Ms. Kensel for cause.

Immediately upon denying the defendant's challenge, the trial court stated that his

"objection is noted."[5]  The record indicates Mr. Bauer exhausted his 12 peremptory

challenges following the third panel of prospective jurors.

Prejudice is presumed when the trial court erroneously denies a challenge

for cause, and the defendant ultimately exhausts his peremptory challenges.  *State*

---

[5] A defendant must show that he objected at the time that the trial court refused to sustain
a challenge for cause of the prospective juror. *State v. Griffin*, 14-450 (La. App. 5 Cir. 12/16/14),
167 So.3d 31, 42, *writ denied*, 15-148 (La. 11/20/15), 180 So.3d 315.

*v. Campbell*, 06-286 (La. 5/21/08), 983 So.2d 810, 856, *cert. denied*, 555 U.S. 1040, 129 S.Ct. 607, 172 L.Ed.2d 471 (2008); *State v. Hensley*, 04-617 (La. App. 5 Cir. 3/1/05), 900 So.2d 1, 8, *writ denied*, 05-823 (La. 6/17/05), 904 So.2d 683. Thus, to prevail on appeal, a defendant must demonstrate (1) erroneous denial of his challenge for cause and (2) use of all his peremptory challenges. *Id.*

La. C.Cr.P. art. 797 provides:

> The state or the defendant may challenge a juror for cause on the ground that:
> (1) The juror lacks a qualification required by law;
> (2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;

A juror is "impartial" when he is neither biased in favor of nor prejudiced against the accused, when he has not formed or expressed an opinion as to the guilt or innocence of the accused, and when he entertains no conscientious scruples which would prevent his carrying law into effect. *State v. Swain*, 180 La. 20, 156 So. 162 (1934). One statement considered in isolation is insufficient to establish that a prospective juror is not impartial. *State v. Mickelson*, 12-2539 (La. 9/3/14), 149 So.3d 178, 187.

In *State v. Bienemy*, 23-271 (La. App. 4 Cir. 12/4/23), 382 So.3d 1011, 1015-16, *writ denied*, 24-50 (La. 6/19/24), 386 So.3d 673, the Fourth Circuit considered the issue of whether a potential juror, who said he would take a defendant's prior conviction into account, should have been dismissed from the panel for cause.

> Defendant alleges that during the voir dire process, Dimak expressed that he would not view the parties equally. During voir dire, Defendant's counsel posed a series of questions to the prospective jurors regarding the Defendant's Fifth Amendment rights and the relevance of defendant's criminal history. Prospective juror Darren Siddons ("Siddons") stated that the State would have a "head start" during this trial considering Defendant's prior convictions. Dimak subsequently agreed with Siddons' statement. Defendant asserts that

Dimak's agreement to the State having a "head start" is sufficient to challenge the juror for cause on the grounds that Dimak is unable to remain impartial.

In denying the claim on appeal, the court looked to the entirety of the voir dire record and concluded:

> Shortly after the "head start" comment was made by Siddons, all of the prospective jurors, including Dimak, collectively answered that they could be impartial when looking at the evidence and determine "what's right is right". Furthermore, when Defendant's counsel raised the for cause challenge to the judge, he stated that he did not hear Dimak mention that he would have an issue with following the Fifth Amendment. Based on our review of the record, we find that the district court did not abuse its discretion when denying Defendant's for cause challenge.

*Id.* As can be seen, the court relied upon the juror's assertion that he could be impartial in determining whether the court correctly denied the challenge for cause.

The true test of a juror's qualification to serve is his ability to judge impartially based on the law and the evidence admitted at trial, as gleaned from the totality of his responses on voir dire examination. *State v. McZeal*, 352 So.2d 592, 595 (La. 1977), *rev'd on other grounds*, (La. 11/14/77) 352 So.2d 592. When a juror expresses a predisposition as to the outcome of a trial, the court should grant a challenge for cause. However, the challenge is appropriately denied if the juror can subsequently disregard previous views and decide based on the evidence presented at trial. *State v. Lee*, 559 So.2d 1310, 1318 (La. 1990). Here, Ms. Kensel's lone statement cannot be sufficient to justify a challenge for cause. The statement that the prospective juror would try her best to judge, based on the facts presented, demonstrates an ability to remain impartial.

When evaluating a district court's decision to deny a for-cause challenge, the "appellate court should accord great deference to the district court's ruling on a challenge for cause, which is necessarily based, in part, on the court's personal observations during questioning." *Mickelson*, 149 So.3d at 186-187. The trial court is vested with broad discretion in ruling on challenges for cause; reversal is

appropriate when the voir dire record as a whole reveals an abuse of discretion. *State v. Anthony*, 98-406 (La. 4/11/00), 776 So.2d 376, 391, *cert. denied*, 531 U.S. 934, 121 S.Ct. 320, 148 L.Ed.2d 258 (2000).

In this case, after reviewing all portions of the voir dire transcript relevant to Ms. Kensel, we find no abuse of discretion in denying the defendant's challenge for cause. Ms. Kensel's response, as a whole, indicates that she could judge the defendant based on his current charges. It has long been held in Louisiana that jurors who had formed opinions but said such opinions would yield to the evidence are qualified to serve.[6] We find no merit in this error assignment.

*Assignment of error number four*

In his fourth assignment of error, the defendant contends that the trial court erred in allowing the state to question him about the details of his prior criminal convictions after he had admitted to the convictions on direct examination.

La. C.E. Art. 609.1 provides, in relevant part:

> A. General criminal rule. In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.
> B. Convictions. Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.
> C. Details of convictions. Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible. However, details of the offense may become admissible to show the true nature of the offense:
> > (1) When the witness has denied the conviction or denied recollection thereof;
> > (2) When the witness has testified to exculpatory facts or circumstances surrounding the conviction; or
> > (3) When the probative value thereof outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury.

---

[6] *State v. Brasseaux*, 163 La. 686, 112 So. 650 (La. 1927), *cert. denied, Genna v. State of Louisiana*, 275 U.S. 522, 48 S.Ct. 22, 72 L.Ed. 405; *State v. Roberson*, 159 La. 562, 105 So. 621 (La. 1925); *State v. Holbrook*, 153 La. 1025, 97 So. 27 (La. 1923).

The record shows that upon direct examination, the defendant admitted to prior convictions for illegal use of weapons, simple criminal damage to property valued at over five hundred dollars,  possession with intent to distribute methamphetamine while also being in possession of a firearm, attempted possession of a firearm by a convicted felon, and possession of heroin.

During cross-examination of the defendant, the state introduced the bills of information for prior offenses to which the defendant admitted pleading guilty. The defendant did not object to the introduction of these exhibits into evidence.

In questioning the defendant, the state first asked to clarify the defendant's illegal discharge of a firearm conviction.  Over the defense counsel's objection, the state specifically read from the relevant bill of information and asked the defendant if the offense he pled guilty to was "the intentional discharge of a firearm under circumstances where it was foreseeable that death or great bodily harm might result to a human being."  The state also asked the defendant to clarify that his convictions on gun-related charges were for violations that occurred on separate dates.  The state and defense counsel then stipulated that the dates of the offenses, as written in the bills of information, were correct.  The final question the state asked the defendant about his record was whether he had a prior conviction for possession of heroin in St. Tammany Parish, which the defendant confirmed.

Contrary to the defendant's assertion that the state's questions about his prior convictions were "extensive," the record shows that the state's questions were limited to the information contained in the bills of information for the offenses the defendant had already admitted pleading guilty to.  These bills of information were also in evidence and published to the jury.  As indicated above, La. C.E. art. 609.1 expressly allows the state to question the defendant about the

fact of a conviction, the name of the offense, and the date. We do not find that the state exceeded these parameters in this case.[7]

This assignment of error is without merit.

*Assignment of error five*

In his final assignment of error, the defendant argues that the trial court abused its discretion when it failed to consider the sentencing guidelines of Article 894.1 and imposed an excessive sentence.

It appears from the defendant's brief and the trial judge's quotations referenced therein[8] that the defendant is challenging his original 10-year sentence. However, the trial judge vacated the defendant's original sentence before imposing the enhanced sentence on April 20, 2023. Thus, the defendant's arguments relative to the original sentences are moot since the original sentence no longer exists. *State v. Hanson*, 00-1168 (La. App. 5 Cir. 12/13/00), 778 So.2d 43, 45.

The defendant filed a motion to reconsider his enhanced sentence on April 20, 2023, which alleged that the defendant's sentence was constitutionally excessive. Where the defendant's motion to reconsider the sentence alleges mere excessiveness of a sentence, the reviewing court is limited to only a review of whether the sentence is constitutionally excessive. La. C.Cr.P. art. 881.1(E); *State v. Mims*, 619 So.2d 1059 (La. 1993).

---

[7] Even assuming, as the defendant suggests, that the State impermissibly exceeded the scope of La. C.E. Art. 609.1, inadmissible other crimes evidence which is disclosed to the jury is subject to a harmless error analysis. *State v. Johnson*, 94-1379 (La. 11/27/95), 664 So.2d 94, 102. An error is harmless when the guilty verdict actually rendered was surely unattributable to the error. *Id*. at 100. As discussed above, the State proved all elements of the offense of carjacking with competent evidence, which included an admission of committing the crime by the defendant. Clarifying details in the bill of information for offenses the defendant admitted pleading guilty to, and which was also introduced into evidence, would be a harmless error on the record presented.

[8] In his brief, the defendant refers to the Court's statement:

> I'm going to sentence you today to 10 years at hard labor in the Department of Corrections, with credit for each day actually served pursuant to Article 880.

A review of the record from both the original sentencing and the defendant's sentencing as a multiple offender on April 20, 2023, shows that the trial court only made this statement on March 22, 2023, which was the date the original sentence was imposed.

The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit imposing excessive punishment. Although a sentence is within statutory limits, the sentence is subject to review for constitutional excessiveness. *State v. Smith*, 01-2574 (La. 1/14/03), 839 So.2d 1, 4. A sentence is excessive when grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. *Id.* A sentence is grossly disproportionate if the crime and punishment are considered in light of the harm done to society, and it shocks the sense of justice. *State v. Lawson*, 04-334 (La. App. 5 Cir. 9/28/04), 885 So.2d 618, 622. The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. *State v. Pearson*, 07-332 (La. App. 5 Cir. 12/27/07), 975 So.2d 646, 656.

In this case, the defendant pled guilty to the multiple offender bill of information, which alleged that he was a second felony offender. The underlying conviction of carjacking, a violation of La. R.S. 14:64.2, provided in relevant part at the time the defendant committed the offense on May 8, 2022:

> B. Whoever commits the crime of carjacking shall be imprisoned at hard labor for not less than two years nor more than twenty years, without benefit of parole, probation, or suspension of sentence.

Concerning sentencing as a second felony offender, La. R.S. 15:529.1(A) provides:

> (1) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-third the longest term and not more than twice the longest term prescribed for a first conviction.

Thus, the defendant's sentencing range as a second felony offender was between 6 2/3 and 40 years. The defendant's enhanced sentence was ten (10) years, only one-quarter of the longest sentence.

In reviewing a trial court's sentencing discretion, we consider three factors: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts. *State v.*

*Allen*, 03-1205 (La. App. 5 Cir. 2/23/04), 868 So.2d 877, 880 (citation omitted). However, specific matters are not required to be given any particular weight at sentencing. *State v. Tracy*, 02-227 (La. App. 5 Cir. 10/29/02), 831 So.2d 503, 516, *writ denied*, 02-2900 (La. 4/4/03), 840 So.2d 1213 (citation omitted).

After review, we find that the defendant's 10-year enhanced sentence as a second felony offender is not excessive, considering the nature of the offense and the nature and background of the defendant. As noted, the defendant could have received up to a forty (40) year sentence as a second felony offender. The evidence at trial demonstrated that the defendant used physical force against Ms. Campbell while he was carjacking her, including violently and repeatedly grabbing her by the neck and laying over her to gain control of the vehicle. The defendant's actions in the parking lot, on the streets of Jefferson Parish, and ultimately, on the Causeway Bridge show remarkable disregard for others who may have been in the vicinity as he committed his crime. Additionally, the defendant has a criminal record that extends back to 2003 and includes convictions for gun charges, such as illegal use of a weapon, which endangers the general public.[9] Considering these factors, we fail to find that the defendant's multiple offender sentence, only 3 ½ years above the statutory minimum, is grossly disproportionate or shocks our sense of justice. We find no merit in this assignment of error.

*Error patent review*

We reviewed the record for errors patent, according to La. C.Cr.P. art. 920, *State v. Oliveaux*, 312 So.2d 337 (La. 1975), and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990). We note two errors that require correction.

---

[9] La. R.S. 14:94 provides, in part:

> A. Illegal use of weapons or dangerous instrumentalities is the intentional or criminally negligent discharging of any firearm, or the throwing, placing, or other use of any article, liquid, or substance, where it is foreseeable that it may result in death or great bodily harm to a human being.

First, while the multiple offender sentencing minute entry matches the transcript about the enhanced sentence being imposed without the benefit of probation or suspension of sentence, the multiple offender uniform commitment order ("UCO") does not reflect that the sentence was imposed with any restriction of benefits.[10]  To ensure accuracy in the record, we remand the matter to the trial court to correct the multiple offender UCO to reflect that the defendant's enhanced sentence is without the benefit of parole, probation, or suspension of sentence.  We also direct the Clerk of Court for the 24th Judicial District Court to transmit the corrected UCO to the appropriate authorities and the Department of Corrections legal department. *State v. Breaux*, 22-535 (La. App. 5 Cir. 4/26/23), 362 So.3d 1020, 1026-27.

Next, another discrepancy exists between the multiple offender sentencing minute entry, the UCO, and the transcript.  The sentencing minute entry and UCO provide that the defendant's sentence is to run concurrently with case #20-3319 and any other sentence the defendant is currently serving.  However, the sentencing transcript is silent as to whether the defendant's enhanced sentence is to run concurrently with any other sentence.  Thus, the transcript creates an ambiguity regarding the consecutive nature of the defendant's sentences. *State v. Chirlow*, 18-359 (La. App. 5 Cir. 12/12/18), 260 So.3d 1282, 1290. Accordingly, we remand the matter to the trial court for clarification of sentence as it relates to the concurrent nature of defendant's sentence with other existing sentences.

---

[10] The defendant's enhanced sentence is illegally lenient because the underlying statute for carjacking, La. R.S. 14:64.2(B) requires the sentence to be served without the benefit of parole, probation, or suspension on sentence.  When a defendant is sentenced as a multiple offender under La. R.S. 15:529.1, the penalty provision for the underlying sentence determines whether there is a parole restriction.  *State v. Luckett*, 17-432 (La. App. 5 Cir. 12/27/17), 236 So.3d 1278, 1280.  When the trial court does not mention the restriction of benefits, such conditions are deemed to exist by operation of law under La. R.S. 15:301.1.

*Decree*

For the previous reasons, we affirm the defendant's conviction and sentence and remand for the correction of errors patent and clarification of the defendant's sentence.

**CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**OCTOBER 30, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-KA-447

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE ELLEN SHIRER KOVACH (DISTRICT JUDGE)
MONIQUE D. NOLAN (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          JANE C. HOGAN (APPELLANT)

**MAILED**
ALYSSA ALEMAN (APPELLEE)             CAROLYN CHKAUTOVICH (APPELLEE)
ATTORNEYS AT LAW                     HONORABLE PAUL D. CONNICK, JR.
200 DERBIGNY STREET                  (APPELLEE)
GRETNA, LA 70053                     DISTRICT ATTORNEY
                                     TWENTY-FOURTH JUDICIAL DISTRICT
                                     200 DERBIGNY STREET
                                     GRETNA, LA 70053